JEFFREY J. PARKER, Cal. Bar No. 155377
OLIVIER F. THEARD, Cal. Bar No. 217763
AMIR A. TORKAMANI, Cal. Bar. No. 260009
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
333 South Hope Street, 48th Floor
Los Angeles, California  90071-1448
Telephone:  213-620-1780
Facsimile:   213-620-1398
jparker@sheppardmullin.com
otheard@sheppardmullin.com
atorkamani@sheppardmullin.com

Attorneys for Defendant
EXXON MOBIL CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHERN CALIFORNIA RIVER WATCH, a non-profit Corporation,<br><br>Plaintiff,<br><br>v.<br><br>EXXON MOBIL CORPORATION, a New Jersey Corporation, and DOES 1-20, Inclusive,<br><br>Defendant. | Case No. 3:10-cv-00534 EDL<br><br>*Assigned to the Hon. Elizabeth D. Laporte*<br><br>DEFENDANT EXXON MOBIL CORPORATION'S:<br><br>(1) NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6);<br><br>(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>Date:  June 8, 2010<br>Time:  9:00 a.m.<br>Dept.:  Courtroom E<br><br>*[Proposed Order and Request for Judicial Notice filed concurrently herewith]*<br><br>Complaint Filed:  February 5, 2010<br>Trial Date:  None Set |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 8, 2010 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom E of the above-entitled Court, Defendant Exxon Mobil Corporation ("ExxonMobil") will and hereby does move the Court pursuant to the Federal Rules of Civil Procedure, Rule 12(b)(6), for an order dismissing the First, Third, Fourth, and Fifth Claims for Relief asserted by Plaintiff Northern California River Watch ("River Watch" or "Plaintiff") under the Resource Conservation and Recovery Act of 1976 ("RCRA").  Plaintiff's First, Third, Fourth, and Fifth Claims for Relief should be dismissed for failure to state a claim upon which relief can be granted.  Plaintiff has either failed to allege facts in support of its claims, or a complete defense to each claim appears from the face of the Complaint and upon facts subject to judicial notice.

This Motion is made on the grounds that Plaintiff's Claims for Relief under 42 U.S.C. § 6972(a)(1)(A)—known as "RCRA Subsection A" —should be dismissed for two reasons.

First, Plaintiff has failed to allege facts sufficient to assert a claim under RCRA Subsection A because Plaintiff has not adequately identified a statute, regulation, or clean-up order issued under Chapter 82 of Title 42 of the U.S. Code that ExxonMobil is alleged to have violated.  See 42 U.S.C. § 6972(a)(1)(A).

Second, as a matter of law Plaintiffs cannot assert a claim against ExxonMobil because Subsection A does not apply to wholly past violations.  <u>Board of County Commissioners v. Brown Group Retail, Inc.</u>, 598 F. Supp. 2d 1185, 1198 (D. Colo. 2009).

This Motion is based upon the accompanying memorandum of points and authorities, the concurrently-filed Request for Judicial Notice, and all of the pleadings, records, and papers on file therein, as well as such other oral and/or documentary evidence as may be presented at or before the time of the hearing of this Motion.

Dated: April 23, 2010

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By     */s/ Amir A. Torkamani*
JEFFREY J. PARKER
OLIVIER F. THEARD
AMIR A. TORKAMANI

Attorneys for Defendant
EXXON MOBIL CORPORATION

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.
## INTRODUCTION

Plaintiff requests that the Court, via an injunction, assume oversight of the remediation of three different former Exxon-branded gasoline stations that are currently being remediated under the oversight of environmental regulatory agencies. Plaintiff asserts that ExxonMobil has violated the Resource Conservation and Recovery Act ("RCRA") since 2004, notwithstanding that ExxonMobil has not owned or operated any of the stations at issue since 2000. Plaintiff's Complaint is deficient and should be dismissed for two reasons:

(1) Plaintiff's RCRA Notice and Complaint fail to identify any statutes ExxonMobil could have violated within the time period at issue. Specifically, Plaintiff alleges that, from 2004 to the present, ExxonMobil has violated various provisions of RCRA and California law applicable only to "owners" and "operators" of underground storage tanks or "USTs". However, ExxonMobil has not owned or operated any of the properties or UST systems at issue since 2000. Accordingly, Plaintiff's First, Third, and Fourth Claims for Relief should be dismissed as a matter of law.

(2) Plaintiff's First, Third, Fourth, and Fifth Claims for Relief under RCRA Subsection A (42 U.S.C. § 6972(a)(1)(A)) should be dismissed because Subsection A does not apply to "wholly past violations." Where a party no longer owns or operates a property at the time an action is filed—as is the case here—any alleged violations are "wholly past" and not actionable under Subsection A. See Board of County Commissioners v. Brown Group Retail, Inc., 598 F. Supp. 2d 1185, 1198 (D. Colo. 2009). Accordingly, Plaintiff's First, Third, Fourth, and Fifth Claims for Relief are deficient as a matter of law and should be dismissed.

## II.
## **BRIEF SUMMARY OF ALLEGATIONS**

River Watch alleges that, since 2004, ExxonMobil has violated RCRA in connection with three former Exxon-branded gasoline service stations:

(1) 6301 Commerce Boulevard, Rohnert Park, CA (the "Commerce Property");

(2) 175 Southwest Boulevard, Rohnert Park, CA (the "Southwest Property"), and;

(3) 5153 Old Redwood Highway North, Petaluma, CA (the "Redwood Property") (collectively, "the Properties"). (Complaint, Exh. A, pp. 6-8).

ExxonMobil has not owned or operated any of the Properties since June 15, 2000, when it divested all of them to Commercial Asset-California Trust. (RJN, Exhs. 1-4). On May 31, 2001, the Properties were transferred from Commercial Asset-California Trust to Whitey's TBA, Inc. (Id.) Whitey's TBA, Inc. is the current owner of the Properties.

In general, Plaintiff alleges that ExxonMobil violated RCRA at each station by failing to comply with laws regarding recordkeeping, storage, reporting, monitoring, and preventing releases of hazardous wastes, citing to a host of federal and California statutes and regulations. (Complaint, Exh. A, pp. 3-5). RiverWatch alleges that:

> Polluters have inadequately maintained records of the manner in which their hazardous wastes have been treated, stored and/or disposed of; inadequately monitored, reported, and/or complied with existing regulations concerning their wastes; inadequately provided storage facilities for their wastes; and in the past have not developed adequate contingency plans for effective action to minimize damage from the unauthorized releases of hazardous contaminants.

(Complaint, Exh. A, p. 3).

RiverWatch asserts five Claims for Relief against ExxonMobil. (Complaint, ¶¶ 25-50). The First Claim for Relief alleges violation of 42 U.S.C. § 6972(a)(1)(A) ("Subsection A") in connection with the statutes and regulations listed in River Watch's RCRA Notice. (Complaint, ¶¶ 25-32). The Second Claim for Relief alleges violation of 42 U.S.C. § 6927(a)(1)(B) ("Subsection B"). (Complaint, ¶¶ 33-38). The Third, Fourth, and Fifth Claims for Relief allege violations of both Subsections A and B in connection with 42 U.S.C. §§ 6924, 6925, and 6945, respectively. (Complaint, ¶¶ 39-50).

### III.
### THE COURT SHOULD DISMISS PLAINTIFF'S FIRST, THIRD, FOURTH, AND FIFTH CLAIMS FOR RELIEF UNDER RCRA SUBSECTION A

**A.   Plaintiff's First, Third, And Fourth Claims For Relief Under 42 U.S.C. 6972(a)(1)(A) Should Be Dismissed For Failing To Adequately Identify A Statute or Regulation that ExxonMobil Violated**

Plaintiff's First, Third, and Fourth Claims for Relief are based on Subsection A. (Complaint, ¶¶ 25-32, 39-50). RCRA Subsection A provides that a person may commence a civil action against any person "who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this Act." 42 U.S.C. § 6972(a)(1)(A).

Before bringing a Subsection A claim, a plaintiff must provide notice of the violation to the defendant. 42 U.S.C. § 6972(b)(1). That notice must identify "the specific permit, standard, regulation, condition, requirement, or order which has allegedly been violated." 40 C.F.R. § 254.3(a).

Plaintiff identifies – and asserts that ExxonMobil violated – various statutes and regulations that set forth requirements for "owners" or "operators" of

-3-

underground storage tank ("UST") systems and/or hazardous waste facilities. (Complaint, ¶¶ 26, 39, 44; Exh. A, pp. 10-11). However, the terms "owner" and "operator" as used in those statutes and regulations are defined to include only the person or entity who owns or operates the UST system or hazardous waste facility at the time the violation is alleged. See 40 C.F.R. §§ 280.12, 260.10; Cal. Health & Safety Code §§ 25281(k), (j).

With respect to a UST system, an "owner" is defined as "any person who owns a UST system used for storage, use, or dispensing of regulated substances" or, if the system is no longer in use after November 8, 1984, "any person who owned such UST immediately before the discontinuation of its use." 40 C.F.R. § 280.12. An "operator" is defined as "any person in control of, or having responsibility for, the daily operation of the UST system." Id.

Similar definitions of "owner" and "operator" of a UST system are found in the California Health and Safety Code. An "owner" means the owner of an underground storage tank. Cal. Health & Safety Code § 25281(k). An "operator" is "any person in control of, or having daily responsibility for, the daily operation of an underground storage tank system." Cal. Health & Safety Code § 25281(j).

Definitions applicable to hazardous waste facilities are also limited. An "owner" is defined as "the person who owns a facility or part of a facility." 40 C.F.R. § 260.10. An "operator" is defined as "the person responsible for the overall operation of the facility." Id.

Plaintiff asserts that ExxonMobil has been in violation of various statutes and regulations since June 2004. (Complaint, ¶¶ 40, 45, 49; Exh. A, p. 5). However, ExxonMobil sold all of the Properties in 2000, long before the alleged violations occurred in 2004. (RJN, Exhs. 2-4). Therefore, ExxonMobil was not an owner or operator in 2004. (Id.) In 2004, ExxonMobil was not the "person who **owns** a UST system" nor was it the "person **in control of, or having daily responsibility for, the daily operation**" of the UST systems. ExxonMobil also was not an owner or

operator of a hazardous waste facility in 2004 because it was not "the person who **owns** a facility" nor was it "the person responsible for the overall **operation of the facility**." Accordingly, the statutes identified by Plaintiff are inapplicable to ExxonMobil and ExxonMobil could not have violated them. Plaintiff fails to adequately identify a statute or ordinance promulgated under RCRA that ExxonMobil could have violated, and Plaintiff's First, Third, and Fourth Claims for Relief should therefore be dismissed.

### 1. Plaintiff's First Claim For Relief Should Be Dismissed Because It Fails To Adequately Identify A Statute Violated By ExxonMobil

Plaintiff's First Claim for Relief is based on the violations alleged in the RCRA Notice. (Complaint, ¶ 26). In its RCRA Notice, RiverWatch alleges ExxonMobil is responsible for the following violations:

> 1. Failure to prevent a release, in violation of 40 CFR §§ 280.30, 280.31, and California Health & Safety Code §§ 25292.1(a)-(c), 25292.3(a) and (b);
>
> 2. Failure to properly detect and monitor releases, in violation of 40 CFR §§ 280.40-280.44 and California Health & Safety Code § 25292;
>
> 3. Failure to properly report and keep records of the release, in violation of 40 CFR §§ 280.34, 280.50, 280.52, 280.53, 280.63(b) and California Health & Safety Code §§ 25289, 25293 and 25295(a)(1);
>
> 4. Failure to take proper corrective action, in violation of 40 CFR §§ 280.53, 280.60-280.66 and California Health & Safety Code § 25295(a)(1).

(Complaint, Exh. A, pp. 10-11).

However, all of the statutes and regulations Plaintiff claims ExxonMobil violated apply only to the owners and operators of UST systems at the time of the violation. Specifically, they provide in relevant part that:

operator of a hazardous waste facility in 2004 because it was not "the person who **owns** a facility" nor was it "the person responsible for the overall **operation of the facility**." Accordingly, the statutes identified by Plaintiff are inapplicable to ExxonMobil and ExxonMobil could not have violated them. Plaintiff fails to adequately identify a statute or ordinance promulgated under RCRA that ExxonMobil could have violated, and Plaintiff's First, Third, and Fourth Claims for Relief should therefore be dismissed.

### 1. Plaintiff's First Claim For Relief Should Be Dismissed Because It Fails To Adequately Identify A Statute Violated By ExxonMobil

Plaintiff's First Claim for Relief is based on the violations alleged in the RCRA Notice. (Complaint, ¶ 26). In its RCRA Notice, RiverWatch alleges ExxonMobil is responsible for the following violations:

> 1. Failure to prevent a release, in violation of 40 CFR §§ 280.30, 280.31, and California Health & Safety Code §§ 25292.1(a)-(c), 25292.3(a) and (b);
>
> 2. Failure to properly detect and monitor releases, in violation of 40 CFR §§ 280.40-280.44 and California Health & Safety Code § 25292;
>
> 3. Failure to properly report and keep records of the release, in violation of 40 CFR §§ 280.34, 280.50, 280.52, 280.53, 280.63(b) and California Health & Safety Code §§ 25289, 25293 and 25295(a)(1);
>
> 4. Failure to take proper corrective action, in violation of 40 CFR §§ 280.53, 280.60-280.66 and California Health & Safety Code § 25295(a)(1).

(Complaint, Exh. A, pp. 10-11).

However, all of the statutes and regulations Plaintiff claims ExxonMobil violated apply only to the owners and operators of UST systems at the time of the violation. Specifically, they provide in relevant part that:

> (a) **Owners and operators** must ensure that releases due to spilling or overfilling do not occur . . .
> (b) The **owner and operator** must report, investigate, and clean up any spills and overfills. . .

40 C.F.R. § 280.30 (emphasis added).

> All **owners and operators** of steel UST systems with corrosion protection must . . .

40 C.F.R. § 280.31 (emphasis added).

> (a) **Owners and operators** of new and existing UST systems must . . .
> (b) When a release detection method operated in accordance with the performance standards in § 280.43 and § 280.44 indicates a release may have occurred, **owners and operators** must . . .
> (c) **Owners and operators** of all UST systems must . . .

40 C.F.R. § 280.40 (emphasis added).

> **Owners and operators** of petroleum UST systems must . . .

40 C.F.R. § 280.41 (emphasis added).

> **Owners and operators** of hazardous substance UST systems must provide release detection that meets the following requirements . . .

40 C.F.R. § 280.42 (emphasis added).

> Each method of release detection for tanks used to meet the requirements of § 280.41 must be conducted in accordance with the following . . .

40 C.F.R. § 280.43 (referencing 40 C.F.R. § 280.42).

> Each method of release detection for piping used to meet the requirements of § 280.41 must be conducted in accordance with the following . . .

40 C.F.R. § 280.44 (referencing 40 C.F.R. § 280.42).

> (a) **Owners and operators** of UST systems must . . .
> (b) **Owners and operators** of UST systems must . . .

40 C.F.R. § 280.53 (emphasis added).

> **Owners and operators** of petroleum or hazardous substance UST systems must . . .

40 C.F.R. § 280.60 (emphasis added).

> Upon confirmation of a release in accordance with § 280.52 or after a release from the UST system is identified in any other manner, **owners and operators** must . . .

40 C.F.R. § 280.61 (emphasis added)

> (a) Unless directed to do otherwise by the implementing agency, **owners and operators** must perform the following abatement measures . . .
> (b) Within 20 days after release confirmation, or within another reasonable period of time determined by the implementing agency, **owners and operators** must . . .

40 C.F.R. § 280.62 (emphasis added).

> (a) Unless directed to do otherwise by the implementing agency, **owners and operators** must . . .
> (b) Within 45 days of release confirmation or another reasonable period of time determined by the implementing agency, **owners and operators** must . . .

40 C.F.R. § 280.63 (emphasis added).

> At sites where investigations under § 280.62(a)(6) indicate the presence of free product, **owners and operators** must . . .

40 C.F.R. § 280.64 (emphasis added).

> (a) In order to determine the full extent and location of soils contaminated by the release and the presence and concentrations of dissolved product contamination in the ground water, **owners and operators** must . . .
> (b) **Owners and operators** must . . .

40 C.F.R. § 280.65 (emphasis added).

> (a) At any point after reviewing the information submitted in compliance with §§ 280.61 through 280.63, the implementing agency may require **owners and operators** to . . .

40 C.F.R. § 280.66 (emphasis added).

> (a) To carry out the purposes of this chapter or Chapter 6.75 (commencing with Section 25299.10), any duly authorized representative of the local agency, the regional board, or the board has the authority . . .
> (b) To carry out the purposes of this chapter or Chapter 6.75 (commencing with Section 25299.10), any authorized representative of the local agency, the regional board, or

-7-

> the board may require the **owner or operator** of an underground storage tank to . . .

Cal. Health & Safety Code § 25289 (emphasis added).

> For every underground storage tank installed on or before January 1, 1984, and used for the storage of hazardous substances, the following actions shall be taken:
> (a) On or before July 1, 1985, the **owner or operator** shall . . .
> (b) Provide a means for visual inspection of the tank system, wherever practical, for the purpose of the monitoring required by subdivision (a) . . .

Cal. Health & Safety Code § 25292 (emphasis added).

> All underground tank systems shall meet the following operational requirements:
> (a) The underground tank system shall be operated to prevent unauthorized releases, including spills and overfills, during the operating life of the tank, including during gauging, sampling, and testing for the integrity of the tank.
> (b) Where equipped with cathodic protection, the underground tank system shall be operated by a person with sufficient training and experience in preventing corrosion.
> (c) The underground tank system shall be structurally sound at the time of upgrade or repair.

Cal. Health & Safety Code § 25292.1 (referencing Cal. Health & Safety Code § 25292).

> (a) Upon the discovery of a significant violation of any requirement in this chapter that poses an imminent threat to human health or safety or the environment or of any regulation adopted pursuant to this chapter, the local agency may . . .
> (b) Upon the discovery of a significant violation of any requirement in this chapter or of any regulation adopted pursuant to this chapter, the local agency may issue a notice of significant violation to the **owner or operator**. The **owner or operator** who receives a notice of significant violation shall . . .

Cal. Health & Safety Code § 25292.3 (emphasis added).

> The **owner or operator** of the underground tank system shall . . .

Cal. Health & Safety Code § 25293 (emphasis added).

-8-

> (a)(1) Any unauthorized release which escapes from the secondary containment, or from the primary containment, if no secondary containment exists, increases the hazard of fire or explosion, or causes any deterioration of the secondary containment of the underground tank system shall be reported by the **owner or operator** . . .

Cal. Health & Safety Code § 25295 (emphasis added).

As discussed above, ExxonMobil does not fall within the definition of "owner" or "operator" because it did not own or operate the Properties in 2004. Accordingly, Plaintiff has failed to adequately identify a statute or regulation that ExxonMobil could have violated. Plaintiff's First Claim for Relief should therefore be dismissed.

### 2. Plaintiff's Third Claim For Relief Should Be Dismissed Because It Fails To Adequately Identify A Statute Violated By ExxonMobil

Plaintiff's Third Claim for Relief—which lists Subsection A, Subsection B, and 42 U.S.C. § 6924—is vague as to the statutory basis under which Plaintiff brings it. RCRA provides only two bases for a private citizen to bring a citizen suit: Subsection A and Subsection B. Accordingly, there are only two interpretations: either Plaintiff purports to bring a citizen suit under Subsection A based on an alleged violation of 42 U.S.C. § 6924 ("Section 6924") or Plaintiff purports to bring a citizen suit under Subsection B based on an alleged violation of Section 6924. (Complaint, ¶ 39).

However, Subsection B applies to situations constituting an imminent and substantial endangerment to human health or the environment, whereas Subsection A applies to a person "who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this Act." 42 U.S.C. §§ 6972(a)(1)(A), 6972(a)(1)(B). The

Third Claim for Relief contains allegations of violation of Section 6924, but lacks any allegation of imminent and substantial endangerment. (See Complaint, ¶¶ 39-41). Therefore, the claim cannot be one brought under Subsection B.

Thus, the Third Claim for Relief appears to assert a citizen suit under Subsection A based on an alleged violation of Section 6924 for alleged violation of "performance standards, applicable to **owners and operators** of facilities for the treatment, storage, or disposal of hazardous waste." 42 U.S.C. § 6924 (emphasis added). As discussed above, however, in 2004 ExxonMobil was not the "owner" or "operator" of a hazardous waste facility, so Section 6924 cannot apply to ExxonMobil. Accordingly, Plaintiff's Third Claim for Relief should be dismissed in its entirety or, at the very least, to the extent it relies on RCRA Subsection A.

### 3. **Plaintiff's Fourth Claim For Relief Should Be Dismissed Because It Fails To Adequately Identify A Statute Violated By ExxonMobil.**

Plaintiff's Fourth Claim for Relief is similarly vague as to the statutory basis under which Plaintiff brings it. Plaintiff again lists three statutes—Subsection A, Subsection B, and 42 U.S.C. § 6925 ("Section 6925"). The Fourth Claim for Relief, however, again contains allegations of violation of Section 6925, but lacks any allegation of imminent and substantial endangerment. (See Complaint, ¶¶ 42-46). Therefore, the claim cannot be one brought under Subsection B.

Thus, the Fourth Claim for Relief also appears to allege a Subsection A citizen suit based on violation of Section 6925. Section 6925 provides the administrator with the authority to "promulgate regulations requiring each person **owning or operating** an existing facility . . . for the treatment, storage, or disposal of hazardous waste . . . to have a permit issued pursuant to this section." 42 U.S.C. § 6925 (emphasis added). In 2004 ExxonMobil was no longer an "owner" or "operator" of a hazardous waste facility, and thus cannot have violated Section

6925. Accordingly, Plaintiff's Fourth Claim for Relief should be dismissed to the extent it relies on Subsection A.

### B. Plaintiff's First, Third, Fourth, and Fifth Claims For Relief Should Be Dismissed Because They Allege Wholly Past Violations.

Plaintiffs' First, Third, Fourth, and Fifth Claims for Relief should be dismissed for the additional reason that Subsection A cannot be applied to "wholly past violations." Actions under Subsection A can only be brought against an owner or operator who is alleged to be in violation of RCRA *at the time* the suit is brought. See Board of County Commissioners v. Brown Group Retail, Inc., 598 F. Supp. 2d 1185, 1198 (D. Colo. 2009).[1]

In Brown, a County in Colorado purchased a parcel of property in 1983 that was previously owned by the Brown Group. The County found toxic solvents in the soil and groundwater and eventually sued the Brown Group in 2008 under various theories, including RCRA. The court dismissed the RCRA claim pursuant to Rule 12(b)(6) because RCRA does not permit a party to sue under Subsection A for a "wholly past violation." Id. at 1198-1201. Significantly, the Court stated:

> When the owner or operator alleged to be in violation of RCRA ceased operations before the suit was filed, any violations were "wholly past violations" that do not give rise to suit under Section 6972(a)(1)(A).

Id. at 1199-1200. Because the Brown Group had not owned the property for many years prior to the filing of the lawsuit, all of the alleged conduct must have

---

[1] The Clean Water Act, which contains identical language to 42 U.S.C. § 6972(a)(1)(A), has repeatedly been construed to bar suits based on wholly past violations. Gwaltney of Smithfield v. Chesapeake Bay Foundation, 484 U.S. 49, 58-59 (1987) (superseded by statute on other grounds); Community Association for Restoration of the Environment v. Henry Bosma Dairy, 305 F.3d 943, 953 (9th Cir. 2002); Natural Resources Defense Counsel v. Southwest Marine, Inc., 236 F.3d 985, 998 (9th Cir. 2000) (distinguished on other grounds).

constituted "wholly past" RCRA violations and was therefore not actionable under 42 U.S.C. § 6972(a)(1)(A). Id.

Similar to Brown, both the allegations in the Complaint and facts subject to judicial notice confirm that ExxonMobil was not an owner or operator of the Properties at the time this lawsuit was filed in February 2010, nor in June 2009 when the RCRA Notice was first served. ExxonMobil has not owned or operated the Properties since 2000. (RJN, Exhs. 1-4). Thus, ExxonMobil could not possibly have been "in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter" *at the time* this lawsuit was brought. 42 U.S.C. § 6972(a)(1)(A). As a result, Plaintiff's Subsection A claims in its First, Third, Fourth, and Fifth Claims for Relief should be dismissed without leave to amend.

# IV.
# CONCLUSION

Plaintiff's First, Third, and Fourth Claims for Relief fail to adequately identify a statute or regulation promulgated under RCRA that ExxonMobil allegedly violated.  Additionally, Plaintiff's Complaint alleges wholly past violations that are not actionable under Subsection A.  Because Plaintiff's First, Third, Fourth, and Fifth Claims for Relief under RCRA fail to state a claim upon which relief can be granted, those claims should be dismissed without leave to amend.

Dated:  April 23, 2010

        Respectfully submitted,

        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

    By    ***/s/ Amir A. Torkamani***
        JEFFREY J. PARKER
        OLIVIER F. THEARD
        AMIR A. TORKAMANI

        Attorneys for Defendant
        EXXON MOBIL CORPORATION