UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NORTHERN CALIFORNIA RIVER WATCH,

    Plaintiff,

    v.

EXXON MOBIL CORPORATION

    Defendant(s).
_____/

No. C 10-0534 PJH

**ORDER GRANTING MOTION TO DISMISS**

Defendant's motion to dismiss and to strike came on for hearing on June 30, 2010 before this court. Plaintiff Northern California River Watch ("plaintiff" or "River Watch") appeared through its counsel, Jack Silver. Defendant Exxon Mobile Corporation ("defendant" or "Exxon") appeared through its counsel, Jeffrey J. Parker. Having read all the papers submitted and carefully considered the relevant legal authority, the court hereby GRANTS the motion to dismiss and to strike, for the reasons stated at the hearing, and as follows.

**BACKGROUND**

This action arises out of defendant's alleged violations of the Resource Conservation and Recovery Act ("RCRA"). Plaintiff Northern California River Watch ("plaintiff" or "River Watch") is a non-profit organization dedicated to protecting, enhancing and helping to restore the waters of Northern California, including its drinking water sources, groundwater, rivers, creeks and tributaries. See Complaint, ¶ 9.

Plaintiff's complaint takes issue with defendant's actions vis-a-vis the following three gasoline service stations that were formerly under Exxon's control: (1) 6301 Commerce Blvd in Rohnert Park, CA ("Commerce Property"); (2) 175 Southwest Blvd in Rohnert Part, CA ("Southwest Property"); and (3) 5153 Old Redwood Highway North in Petaluma, CA ("Redwood Property"). See Complaint, ¶ 1. Exxon owned and/or operated each of these

gas station sites prior to June 2000. Since June 2000, Exxon has sold or otherwise transferred each of these properties to an entity known as Whiteys TBA Inc. <u>See</u> Exxon's Request for Judicial Notice ("RJN"), Exs. 2-4. All three sites continue to be used as gas stations, under the Valero brand name.

Plaintiff alleges that defendant violated the RCRA in connection with each of the foregoing gasoline stations, by failing to comply with provisions regarding record-keeping, storage, reporting, monitoring, and preventing releases of hazardous wastes. <u>See generally id</u>.

Plaintiff filed the instant action on February 5, 2010, asserting five causes of action against defendant pursuant to various provisions of the RCRA: (1) violation of 42 U.S.C. § 6972(a)(1)(A) (violation of a permit, standard, regulation, condition, etc.); (2) violation of 42 U.S.C. § 6972(a)(1)(B) (imminent and substantial endangerment to human health/environment); (3) violation of 42 U.S.C. §§ 6972(a)(1)(A-B) (same as foregoing) and § 6924 (violation of procedural requirements); (4) violation of 42 U.S.C. §§ 6972(a)(1)(A-B) (same as foregoing) and § 6925 (unpermitted handling, treatment, storage and/or disposal of hazardous waste); and (5) violation of 42 U.S.C. §§ 6972(a)(1)(A-B) (same as foregoing) and § 6945 (prohibition of open dumping).

Defendant now moves to dismiss all claims asserted in the complaint under Federal Rule of Civil Procedure ("FRCP") 12(b), with the exception of plaintiff's second cause of action. Defendant also moves to strike plaintiff's prayer for relief, to the extent plaintiff requests that the court award civil penalties.

**DISCUSSION**

A.  Legal Standards

    1.  <u>Motion to Dismiss</u>

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. <u>Ileto v. Glock, Inc.</u>, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. <u>Allarcom Pay Television, Ltd. v. Gen.</u>

2

Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8.

Rule 8(a)(2) requires only that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are unnecessary – the statement need only give the defendant "fair notice of the claim and the grounds upon which it rests. Erickson v. Pardus, 551 U.S. 89, 93 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). All allegations of material fact are taken as true. Id. at 94. However, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level. Id.

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See id. at 558-59. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n] that the pleader is entitled to relief. Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1950 (2009).

In addition, when resolving a motion to dismiss for failure to state a claim, the court may not generally consider materials outside the pleadings. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). There are several exceptions to this rule. The court may consider a matter that is properly the subject of judicial notice, such as matters of public record. Id. at 689; see also Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) (on a motion to dismiss, a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment). Additionally, the court may consider exhibits attached to the complaint, see Hal Roach Studios, Inc. V. Richard Feiner & Co., Inc., 896 F.2d 1542,

1555 n.19 (9th Cir. 1989), and documents referenced by the complaint and accepted by all parties as authentic. See Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002).

### 2. Motion to Strike

Under Rule (f) of the Federal Rules of Civil Procedure, a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a Rule (f) motion to strike is to avoid the expenditure of time and money that will arise from litigating spurious issues by dispensing with those issues prior to trial. Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983). If the defense asserted is invalid as a matter of law, the court should determine the issue prior to a needless expenditure of time and money. Hart v. Baca, 204 F.R.D. 456, 457 (C.D. Cal. 2001). However, motions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation. Colaprico v. Sun Microsystems, Inc., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991); see also Wright & Miller, Federal Practice and Procedure: Civil 3d § 1381 ("Motions to strike a defense as insufficient are not favored . . . because of their somewhat dilatory and often harassing character. Thus, even when technically appropriate and well-founded, Rule (f) motions often are not granted in the absence of a showing of prejudice to the moving party."); Augustus v. Board of Public Instruction of Escambia County, Florida, 306 F.2d 862, 868 (5th Cir. 1962). The Ninth Circuit has stated that prejudice can arise from allegations that cause delay or confusion of the issues. Sands, 902 F.Supp. at 1166 (citing Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1528 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994)).

B.   Motion to Dismiss

Alleging defendant's RCRA violations as of June 5, 2004, plaintiff's first and third through fifth claims for relief invoke the enforcement right of action codified at Subsection A of the RCRA. See generally Complaint; see also 42 U.S.C. § 6972(a)(1)(A). Subsection A

4

allows for a citizen to commence suit on his own behalf against any person "who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter."  42 U.S.C. § 6972(a)(1)(A).

At the heart of the parties' dispute is whether defendant Exxon – who sold or transferred the properties to others well prior to 2004 and has not owned or operated any of the properties since 2000 – is within the reach of Subsection A.  Defendant invokes (1) its status as a former owner and/or operator of the properties, and (2) legal precedent preventing "wholly past" violations from being remedied under Subsection A, to demonstrate that it is not within reach.  Plaintiff responds that defendant may be held liable under Subsection A by virtue of its failures to remediate the property sites in the past, which failures constitute ongoing liability for continuing and current RCRA violations that are redressible.  For largely similar reasons, plaintiff further asserts that defendant's continuing obligation under the RCRA to remediate the sites at issue also establishes that there is no basis for the claim that defendant's conduct is "wholly past."

      1.     "owner" or "operator" requirement

Plaintiff does not dispute that the language of Subsection A requires that a plaintiff allege a current, ongoing, or intermittent violation of the RCRA, or that plaintiff has alleged several violations of statutes and regulations that govern "owners" and/or "operators" of underground storage tank ("UST") systems.  See 42 U.S.C. § 6972(a)(1)(A)(authorizing suits against any person "who is alleged to be *in violation* of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter")(emphasis added); see also Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49 (1987); Complaint, e.g., ¶¶ 26, 39, 44.  It is also undisputed that defendant sold or transferred its ownership of the three sites in question sometime shortly after 2000, and that plaintiff's complaint pleads a violation date of June 5, 2004.  See RJN, Exs. 2-4; cf. Complaint, ¶¶ 31, 40, 45, 49.  Exxon is therefore not a current "owner" or "operator" of any of the properties in a present violation of the RCRA.

As such, Exxon would seem to be outside the reach of Subsection A.

Plaintiff contends, however, that numerous federal court decisions – most from out of circuit district courts – have allowed Subsection A claims to be stated against prior owners or violators, on the basis that "improperly discharged wastes which continue to exist unremediated represent a continuing violation of RCRA." See e.g., California v. M & P Investments, 308 F. Supp. 2d 1137, 1146 (E.D. Cal. 2003); Gache v. Town of Harrison, New York, 813 F. Supp. 1037 (S.D. N.Y. 1993); Acme Printing Ink Co. v. Menard, Inc., 891 F. Supp. 1289, 1302 (E.D. Wis. 1995).

The validity of plaintiff's general proposition that improperly discharged and unremediated wastes might constitute a continuing violation notwithstanding, there is a distinction between the concept that an unremediated discharge under the RCRA may be considered an ongoing violation regardless of the discharge start date, and the concept that a former or prior owner shall be held liable for such discharge. The two are not coterminous. Indeed, one of the cases plaintiff relies on – Acme Printing – actually supports this distinction. The Acme court noted, "[w]e have no quarrel with the plaintiff's contention that the disposal of hazardous waste can constitute a continuing violation of RCRA and can support a cause of action under section 6972(a)(1)(A)." See 891 F. Supp. at 1302. However, while the parties currently responsible for operating the facility before the court could therefore "be liable under section 6972(a)(1)(A) for violating [statutory regulations], even though the waste disposal took place in the past," this was distinct from the question whether a *prior* owner could be liable. See id.

This distinction may explain why the vast majority of the cases relied upon by plaintiff – including the foregoing – deal with the existence of continuing violations under the RCRA, where a current owner or operator is a defendant. Under the fact patterns presented, while the defendant may have ceased operations prior to the time the suit was filed, ownership and/or operational responsibilities had not ceased.

To the extent, moreover, that plaintiff understandably relies upon City of Toledo v.

Beazer Materials and Services, Inc., 833 F.Supp. 646 (N.D. Ohio 1993), the case is not ultimately apposite. To be sure, the Beazer court took note of the authority regarding continuing violations under the RCRA, and then used that authority as a basis for holding that "the continued presence of unremediated hazardous wastes, regardless of the fact that they were disposed of several years ago by a prior owner of the Site, constitutes an ongoing violation of RCRA." Id. at 655. As defendant properly notes, however, Beazer inexplicably based its decision on holdings in which there was no prior owner or operator at issue, but rather a current owner or operator who had simply ceased activities on the sites in question.

Defendant's contrary reliance on Board of County Com'rs of County of La Plata, Colorado v. Brown Group Retail, Inc., states the more persuasive position. See 598 F.Supp.2d 1185 (D. Colo. 2009). The Brown court came to the opposite conclusion from the Beazer court, noting that, while unremediated hazardous wastes can in fact constitute an ongoing violation under the RCRA, a prior owner cannot be deemed reachable under the RCRA by virtue of such a continuing violation. See id.; see also Connecticut Coastal Fishermen's Ass'n v. Remington Arms Co., 989 F.2d 1305, 1313-16 (2d Cir.1993) (holding no valid claim exists against a prior operator under Section 6972(a)(1)(A)).

In sum, based on (1) the RCRA's requirement that a defendant sued under Subsection A be "in violation" of the statute at the time suit is brought, (2) the undisputed facts regarding defendant's sale and/or transfer of the properties in question to unrelated third parties nearly ten years ago, and (3) plaintiff's failure to submit legal authority persuasively indicating that unremediated hazardous wastes can constitute an ongoing violation under the RCRA as to *prior owners* specifically, the court declines to find that defendant is presently "in violation" of the statute, for purposes of suit under Subsection A. As such, plaintiff's claims pursuant to Subsection A must be DISMISSED on this ground.

2.  "wholly past" violation theory

Defendant's motion raises a secondary but related issue: whether the violations for

7

which plaintiff seeks to assert a Subsection A claim are "wholly past" and therefore not redressible via suit pursuant to Subsection A.  As plaintiff notes, there is little distinction between this "wholly past" issue, and the foregoing issue regarding defendant's ability to fall within Subsection A by virtue of a continuing violation on the property.

For that reason, and for largely similar reasons to those just described, defendant correctly interprets the law to deem its alleged violations 'wholly past' under the RCRA – and therefore, beyond the reach of Subsection A.  As the Supreme Court expressly noted in Gwaltney, "[t]he most natural reading of 'to be in violation' language [i.e., as required by Subsection A] is a requirement that citizen-plaintiffs allege a state of either continuous or intermittent violation - that is, a reasonable likelihood that a past polluter will continue to pollute in the future.  Congress could have phrased its requirement in language that looked to the past ('to have violated'), but it did not choose this readily available option."  See 484 U.S. at 57 (construing language in the Clean Water Act, which the Court noted was "identical [to] language in the citizen suit provisions of several other environmental statutes that authorize only prospective relief," including RCRA Section 6972(a)(1)(A)).

Applying this rationale here, there is no reasonable likelihood that defendant will continue to pollute on the sites in question, given its sale and/or transfer of ownership many years prior.  Furthermore, and as the Gwaltney court noted, Congress knew how to phrase Subsection A so that it covered past conduct by past owners, when drafting the statute.  Indeed, it did so when it drafted Subsection B of the RCRA, which expressly covers "any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility...".  See 42 U.S.C. § 6972(a)(1)(B).  The fact that Congress could have but chose not to include similar language in connection with Subsection A suggests that Subsection A is not, in fact, aimed at addressing violations by prior owners who have no continuing ownership or operational responsibilities in connection with the sites in question.  In other words, conduct that is "wholly past."

For these reasons, the court finds that plaintiff's claims alleging defendant's

1 violations of Subsection A of the RCRA are also DISMISSED on grounds that they allege
2 violations that are "wholly past" within the meaning of Gwaltney, and are accordingly not
3 actionable.

C.  Motion to Strike

Defendant also moves to strike plaintiff's request for civil penalties, on grounds that the RCRA does not authorize recovery of civil penalties to anyone but the United States. Plaintiff, for its part, concedes that civil penalties to private parties are not permissible, but argues that it should be allowed to seek them, and have defendant pay them to the U.S. Treasury, based on the broad recognition given by courts to the civil penalty remedy in the RCRA.

Defendant's motion is GRANTED. As the briefing makes clear, plaintiff's cited authorities largely support the unremarkable proposition that civil penalties are available under the RCRA and are an important part of the statutory scheme enacted by Congress for purposes of enforcing the statute. Plaintiff fails, however, to cite any controlling legal authority for the proposition that plaintiff may seek civil penalties on behalf of the United States, and request that defendant pay such penalties to the U.S. Treasury, if granted.

C.  Conclusion

For all the foregoing reasons, defendant's motion to dismiss is GRANTED. Defendant's motion to dismiss is granted with prejudice, as there is no amendment that could cure the deficiencies noted herein. The court furthermore GRANTS defendant's motion to strike.

**IT IS SO ORDERED.**

Dated: August 11, 2010

PHYLLIS J. HAMILTON
United States District Judge