1   Jack Silver, Esq. SBN  #160575
    Law Office of Jack Silver
2   Post Office Box 5469
    Santa Rosa, CA 95402-5469
3   Tel.(707) 528-8175
    Fax.(707) 528-8675
4   lhm28843@sbcglobal.net

5   Attorneys for Plaintiff
    NORTHERN CALIFORNIA RIVER WATCH
6

7   JEFFREY J. PARKER, State Bar # 155377
    OLIVIER F. THEARD, State Bar # 217763
8   AMIR A. TORKAMANI, State Bar #260009
    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
9       A Limited Liability Partnership
        Including Professional Corporations
10  333 South Hope Street, 48th Floor
    Los Angeles, California 90071-1448
11  Telephone (213-620-1780
    Facsimile (213) 620-1398
12  jparker@sheppardmullin.com
    otheard@sheppardmullin.com
13  atorkamani@sheppardmullin.com

14  Attorneys for Defendant
    EXXON MOBIL CORPORATION
15

16                UNITED STATES DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA

18

19  NORTHERN CALIFORNIA RIVER          CASE NO.:   4:10-cv-00534 PJH
    WATCH, a non-profit corporation,
20                                     STIPULATION RE FILING FIRST
                         Plaintiff,    AMENDED COMPLAINT;
21          v.                         [PROPOSED] ORDER

22  EXXON MOBIL CORPORATION,
    et al,
23
                         Defendants.
24  _____/

25
    //
26

27                                          1
28  _____

    4:10-cv-00534 PJH
    Stipulation Re Filing First Amended Complaint;[Proposed] Order

IT IS HEREBY STIPULATED and agreed to by and between the parties to this action, that Plaintiff NORTHERN CALIFORNIA RIVER WATCH shall be allowed to file the First Amended Complaint for Injunctive Relief, Civil Penalties, Restitution and Remediation, a copy of which is attached hereto as Exhibit "A". By stipulating to the filing of the First Amended Complaint, Defendant EXXON MOBIL CORPORATION is not approving or admitting the allegations or contents of the First Amended Complaint, or waiving its defenses thereto.

IT IS FURTHER STIPULATED and agreed to by and between the parties to this action, that Defendant EXXON MOBIL CORPORATION will have thirty (30) days from the date of service of the First Amended Complaint within which to plead in response to the First Amended Complaint.

DATED: September 14, 2010          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By: _____*/s/ Jeffrey J. Parker*_____
JEFFREY J. PARKER
Attorneys for Defendant
EXXON MOBIL CORPORATION


In addition to stipulating to the above, I, Jack Silver, attest that concurrence in the filing of this Stipulation has been obtained from the other signatory to this document.


DATED: September 14, 2010          LAW OFFICE OF JACK SILVER


By: _____*/s/ Jack Silver*_____
JACK SILVER
Attorneys for Plaintiff
NORTHERN CALIFORNIA RIVER WATCH

2

# [~~PROPOSED~~] ORDER

PURSUANT TO STIPULATION, **IT IS SO ORDERED**.

Dated: 9/16/10



PHYLLIS J. HAMILTON
UNITED STATES DISTRICT JUDGE

3

4:10-cv-00534 PJH
Stipulation Re Filing First Amended Complaint;[Proposed] Order

# EXHIBIT   A

1
2
3
4
5
6

Jack Silver, Esq. SBN 160575
Law Office of Jack Silver
Post Office Box 5469
Santa Rosa, CA 95402-5469
Tel. (707) 528-8175
Fax. (707) 528-8675
E-mail: lhm28843@sbcglobal.net

Attorneys for Plaintiff
NORTHERN CALIFORNIA RIVER WATCH

7

8                          UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19

| | |
|---|---|
| NORTHERN CALIFORNIA RIVER WATCH, a non-profit Corporation,<br><br>           Plaintiff,<br>     v.<br><br>EXXON   MOBIL   CORPORATION;<br>WHITEY'S   TBA,   INC.;   KINNAIRD<br>PROPERTIES,   INC.;   RICHARD   B.<br>STERN; SUSAN E. STERN; GILBERT P.<br>FERREY, CHARLOTTE M. FERREY and<br>JOHN S. HUMMER TRUST, and DOES 1<br>– 10, Inclusive,<br><br>           Defendants.<br>_____/ | CASE NO.: 4:10-cv-00534 PJH<br><br>**PLAINTIFF'S FIRST AMENDED<br>COMPLAINT FOR INJUNCTIVE<br>RELIEF, CIVIL PENALTIES,<br>RESTITUTION AND REMEDIATION<br>(Environmental - RCRA - 42 U.S.C. 6901 *et<br>seq.*)** |

20      NOW COMES Plaintiff, NORTHERN CALIFORNIA RIVER WATCH, a non-profit

21 Corporation, (hereafter, "RIVER WATCH,") by and through its attorneys, and for its First

22 Amended Complaint against Defendants EXXON MOBIL CORPORATION, WHITEY'S TBA,

23 INC, KINNAIRD PROPERTIES, INC., RICHARD B. STERN, SUSAN E. STERN, GILBERT

24 P. FERREY, CHARLOTTE M. FERREY, JOHN S. HUMMER TRUST and DOES 1 – 10,

25 inclusive, (collectively referred to herein as "DEFENDANTS") states as follows:

26
27
28

## I.  NATURE OF THE CASE

1.     This is a citizens' suit brought against DEFENDANTS under the citizen suit enforcement provisions of the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq., (hereafter,"RCRA,") specifically RCRA § 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A), RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), RCRA § 3004, 42 U.S.C. § 6924, RCRA § 3005, 42 U.S.C. § 6924, RCRA § 4005 42 U.S.C. § 6945, to stop DEFENDANTS from repeated and ongoing violations of the RCRA. These violations are detailed in the Notices of Violations and Intent to File Suit dated June 5, 2009 and April 16, 2010 (hereafter, "RCRA NOTICES,") attached hereto as EXHIBITS A and B respectively, and made part of these pleadings.

2.     As described in the RCRA NOTICES, and with reference to each of the Sites, RIVER WATCH alleges Defendant EXXON MOBIL CORPORATION to be a past generator, or past transporter, or past owner or operator of a treatment, storage, or disposal facility, which has contributed or which is contributing to the past or present handling, storage, treatment, transportation, or disposal of a solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment. (42 U.S.C. § 6972(a)(1)(B)).

3.     As described in the RCRA NOTICES and below, RIVER WATCH alleges Defendants WHITEY'S TBA, INC., KINNAIRD PROPERTIES, INC., RICHARD B. STERN, SUSAN E. STERN, GILBERT P. FERREY, CHARLOTTE M. FERREY and JOHN S. HUMMER TRUST, are the current owners of the real property underlying each of the Sites, and/or the operators of ongoing retail gasoline storage and sales; and further alleges, in their capacities as such owners and/or operators, said Defendants are in violation of a permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to the RCRA at each of the respective Sites. (42 U.S.C. § 6972(a)(1)(A); 42 U.S.C. § 6924, 42 U.S.C. § 6925; and 42 U.S.C. § 6945).

4.      RIVER WATCH seeks declaratory relief, injunctive relief to prohibit current and future violations, the imposition of civil penalties against all parties except EXXON MOBIL CORPORATION, and other relief for these violations of the RCRA's standards and regulations applicable to the handling, disposal, transportation, treatment, use or storage of hydrocarbon contaminants and other solid or hazardous wastes as described in the RCRA NOTICES, as their quantity, concentration, physical or chemical characteristics may cause or pose a substantial present or potential hazard to human health and/or to the environment when improperly treated, stored, transported, disposed of, or otherwise managed in violation of the RCRA's prohibition against creating an imminent and substantial endangerment to human health or the environment.

5.      RCRA § 3005, 42 U.S.C. § 6925 requires facilities to obtain permits for the handling, storage, treatment, transportation and/or disposal of solid or hazardous waste.

6.      RCRA § 3004, 42 U.S.C. § 6924 requires owners and operators of solid or hazardous waste treatment, storage, and disposal facilities to follow enumerated standards. These requirements are enumerated in 40 C.F.R. Part 264, and include requirements for General Facility Standards (Subpart B), Preparedness and Prevention (Subpart C), Contingency Plans and Emergency Procedures (Subpart D), Releases from Solid Waste Management Units (Subpart F), Closure and Post-Closure (Subpart G), Financial Requirements (Subpart H), Surface Impoundments (Subpart K), Waste Piles (Subpart L), Land Treatment (Subpart M), Landfills (Subpart N), and Miscellaneous Units (Subpart X).

7.      RCRA § 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A) permits citizen suits against any person or entity alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order effective pursuant to the RCRA.  RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B) permits citizen suits to enjoin the handling, storage, treatment, transportation and/or disposal of hazardous or solid waste which creates or may create an imminent and substantial endangerment to human health or the environment.  Pursuant to RCRA §§ 3008(a) and (g) and 7002(a), 42 U.S.C. §§ 6928(a) and (g) and 6972(a), each violation of the

1   RCRA subjects the violator to a penalty of up to $37,500.00 per day, per violation for violations

2   occurring within five (5) years prior to the initiation of a citizen enforcement action.  In addition,

3   RCRA  §§ 3008(a) and 7002(a), 42 U.S.C.§§ 6928(a) and 6972(a) provide for injunctive relief.

4         8.     The petroleum hydrocarbons at each of the Sites identified in the RCRA NOTICES

5   represent "solid waste" as that term is defined under 42 U.S.C. § 6903(27), as these are discarded

6   materials resulting from industrial and/or commercial activities.  Furthermore, the petroleum

7   hydrocarbons are hazardous wastes under 42 U.S.C. § 6903(5), as they are solid wastes.  Due to

8   their quantity, concentration, physical and/or chemical characteristics, these hazardous wastes

9   may cause or pose a substantial present or potential hazard to human health or the environment

10   when improperly treated, stored, transported, disposed of, or otherwise managed in violation of

11   the RCRA's prohibition against creating an imminent and substantial endangerment to human

12   health or the environment.

13             **II.  PARTIES**

14         9.     Plaintiff NORTHERN CALIFORNIA RIVER WATCH is a 501(c)(3) non-profit

15   public benefit corporation duly organized under the laws of the State of California with

16   headquarters located at 500 North Main Street, Suite 110, Sebastopol, Sonoma County,

17   California.  RIVER WATCH is dedicated to protecting, enhancing and helping to restore the

18   waters of Northern California including its drinking water sources, groundwater,  rivers, creeks

19   and tributaries.  Many of RIVER WATCH's members live in watershed areas  affected by the

20   pollution from the Sites identified in the RCRA NOTICES.   Said members have an interest in

21   said watersheds which is or may be adversely affected by the violations set forth in this First

22   Amended Complaint.  Said members use the affected watersheds for domestic water supply,

23   agricultural water supply, recreation, sports, fishing, swimming, hiking, photography, nature

24   walks and aesthetic enjoyment.  Furthermore, the relief sought herein will redress the injury in

25   fact, the likelihood of future injury and the ongoing interference with the interests of RIVER

26   WATCH's members.

27

28

10.     RIVER WATCH is informed and believes, and on said information and belief alleges that Defendant EXXON MOBIL CORPORATION is a New Jersey Corporation, registered to conduct business in the State of California, with a principal place of business at 5959 Las Colinas Boulevard, Irving, Texas.  Said Defendant will be referred to hereafter as "EXXON."

11.     RIVER WATCH is informed and believes, and on said information and belief alleges that Defendant WHITEY'S TBA, INC., is a California corporation registered to conduct business in the State of California with a principal place of business at 465 Kenwood Court, Suite A, Santa Rosa, Sonoma County, California. RIVER WATCH further alleges that WHITEY'S TBA, INC. is the owner of the real property underlying the three Sites identified in EXHIBIT A; and, was responsible for, or in some way contributed to, the violations which are the subject of this First Amended Complaint, or is or was responsible for the maintenance, supervision, management, operations, or continuing petroleum hydrocarbon contamination at said Sites.

12.     RIVER WATCH is informed and believes, and on said information and belief alleges that Defendant KINNAIRD PROPERTIES, INC., is a California corporation registered to conduct business in the State of California with a principal place of business at 2783 Napa Valley Corporate Drive, Napa, Napa County, California.  RIVER WATCH further alleges that KINNAIRD PROPERTIES, INC is the owner of the real property underlying the Site identified in EXHIBIT B at 1400 South Novato Boulevard, Novato California; and, was responsible for, or in some way contributed to, the violations which are the subject of this First Amended Complaint, or is or was responsible for the maintenance, supervision, management, operations, or continuing petroleum hydrocarbon contamination at said Site.

13.     RIVER WATCH is informed and believes, and on said information and belief alleges that Defendants RICHARD B. STERN and SUSAN E. STERN are individuals residing at 234 South Ridgewood Road, Kentfield, Marin County, California. RIVER WATCH further

1   alleges that RICHARD B. STERN and SUSAN E. STERN are part-owners of the real property

2   underlying the Site identified in EXHIBIT B at 1801 Imola Avenue, Napa, California; and, were

3   responsible for, or in some way contributed to, the violations which are the subject of this First

4   Amended Complaint, or are or were responsible for the maintenance, supervision, management,

5   operations, or continuing petroleum hydrocarbon contamination at said Site.

6        14.     RIVER WATCH is informed and believes, and on said information and belief

7   alleges that Defendants GILBERT P. FERRY, CHARLOTTE M. FERREY are individuals

8   residing at 1082 Grizzly Peak Boulevard, Berkeley, Alameda County, California; and, are the

9   managers and/or overseers of Defendant JOHN S. HUMMER TRUST. RIVER WATCH further

10   alleges said Defendants are the owners of the real property underlying the Site identified in

11   EXHIBIT B at 400 Third Street, San Francisco, California; and, were responsible for, or in some

12   way contributed to, the violations which are the subject of this First Amended Complaint, or are

13   or were responsible for the maintenance, supervision, management, operations, or continuing

14   petroleum hydrocarbon contamination at said Site.

15        15.     RIVER WATCH is informed and believes, and on said information and belief

16   alleges that Defendants DOES 1 – 10, Inclusive, respectively, are persons, partnerships,

17   corporations or entities, who are, or were, responsible for, or in some way contributed to, the

18   violations which are the subject of this First Amended Complaint or are, or were, responsible for

19   the maintenance, supervision, management, operations, or insurance coverage of the Sites

20   identified in the RCRA NOTICES. The names, identities, capacities, or functions of Defendants

21   DOES 1 – 10, Inclusive, are presently unknown to RIVER WATCH, which shall seek leave of

22   court to further amend this pleading to insert the true names of said DOES Defendants when the

23   same have been ascertained.

24   //

25   //

26

27

28

1

## III.  JURISDICTIONAL ALLEGATIONS

2     16.     Subject matter jurisdiction is conferred upon this Court by RCRA § 7002 (a)(1),

3   42 U.S.C. § 6972(a)(1), which states in part,

4       . . . any person may commence a civil action on his own behalf (A) against any
         person . . . who is alleged to be in violation of any permit, standard, regulation,
5        condition requirement , prohibition or order which has become effective
         pursuant to this chapter, or (B) against any person . . . who has contributed or
6        who is contributing to the past or present handling, storage, treatment,
         transportation or disposal of any solid or hazardous waste which may present an
7        imminent and substantial endangerment to health or the environment.

8     17.     Members of RIVER WATCH reside in the vicinity of, derive livelihoods from,

9   own property near, recreate on, in or near, or otherwise use, enjoy and benefit from the

10  watersheds, land, rivers, and associated natural resources into which Defendants pollute.  The

11  interests of members of RIVER WATCH in said watersheds, lands, rivers and associated natural

12  resources are adversely affected by the operations of Defendants WHITEY'S TBA, INC.,

13  KINNAIRD PROPERTIES, INC.,  RICHARD B. STERN, SUSAN E. STERN, GILBERT P.

14  FERREY, CHARLOTTE M. FERREY and JOHN S. HUMMER TRUST in violation of RCRA

15  § 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A), and by Defendant EXXON in violation of RCRA

16  § 7002 (a)(1)(B), 42 U.S.C. § 6972(a)(1)(B).  The health, economic, recreational, aesthetic or

17  environmental interests of RIVER WATCH's members have been, are being, and will continue

18  to be adversely affected by Defendants' unlawful violations of the RCRA as alleged herein.

19  RIVER WATCH contends injuries in fact exist, caused by Defendants' complained of conduct

20  herein, and a likelihood that the requested relief will redress those injuries.

21     18.     Pursuant to RCRA § 7002(2)(A), 42 U.S.C. §6972(2)(A), RIVER WATCH gave

22  statutory notice of the RCRA violations alleged in this First Amended Complaint prior to the

23  commencement of this lawsuit to each of the named Defendants, the United States

24  Environmental Protection Agency (Federal and Regional,) the State of California by serving the

25

26

27

28

1   California Attorney General, the State of California Integrated Waste Management Board, which

2   is the solid waste management agency for the State of California and the California Water

3   Resources Control Board.

4          19.     Pursuant to RCRA §§ 7002(a) and (b), 42 U.S.C. §§ 6972(a) and (b), venue lies

5   in this District as the Sites identified the RCRA NOTICES, as well as operations under

6   Defendants' ownership or control and where illegal activities occurred which are the source of

7   the violations complained of in this action, are all located within this District.

8                              **IV.   STATEMENT OF FACTS**

9          20.     RIVER WATCH is informed and believes, and on said information and belief

10  alleges that Defendant EXXON is a past generator, past transporter, or past owner or operator

11  of the Sites identified in the Notice of Violations and Intent to File Suit dated June 5, 2009

12  (EXHIBIT A) and has contributed to the past handling, storage, treatment, transportation, or

13  disposal solid or hazardous waste which may present an imminent or substantial endangerment

14  to health or the environment.  (42 U.S.C. § 6972 (a)(1)(B)).

15         21.     Regulatory agencies have designated surface water and groundwaters in the

16  watershed areas identified in the RCRA NOTICES as capable of supporting multiple beneficial

17  uses including domestic water supply; and, have established Maximum Contaminant Levels

18  ("MCLs") and Water Quality Objectives ("WQOs") for the pollutants identified in the RCRA

19  NOTICES in surface water and groundwaters.

20         22.     The petroleum hydrocarbon constituents benzene and toluene are known

21  carcinogens or reproductive toxins, and have been listed chemicals under Proposition 65.  These

22  hydrocarbon constituents are also solid waste and hazardous waste under the RCRA and the laws

23  of California authorized under the RCRA. Surface water and groundwater at and around the

24  Sites identified in the RCRA NOTICES are potential sources of drinking water under applicable

25  Regional Water Quality Control Board Plans (aka Basin Plans). RIVER WATCH is informed

26

27

28

1   and believes, and on said information and belief alleges that EXXON has allowed hydrocarbons

2   and other contaminants to pollute surface waters and groundwaters at and around said Sites as

3   discussed in the RCRA NOTICES.

4       23.    RIVER WATCH is informed and believes, and on said information and belief

5   alleges that Defendant EXXON's past handling, use, transport, treatment, storage or disposal of

6   pollutants at the Sites identified in the  Notice of Violations and Intent to File Suit dated June

7   5, 2009 (EXHIBIT A) has occurred in a manner which has allowed significant quantities of solid

8   waste and hazardous hydrocarbon constituents to remain in the soils, groundwater and surface

9   waters beneath and around said Sites and adjacent properties, and to travel off site, so as to

10  possibly reach and impact adjacent surface waters.

11      24.    To date, the levels of petroleum hydrocarbons and hydrocarbon constituents in the

12  soils and groundwaters at said Sites remain significantly above the allowable MCLs or WQOs

13  for said constituents, creating an imminent and substantial endangerment to public health or the

14  environment.

15      25.    RIVER WATCH is informed and believes, and on said information and belief

16  alleges that the activities of DEFENDANTS as alleged in the RCRA NOTICES have been both

17  knowing and intentional; that DEFENDANTS have known of the contamination at the Sites

18  identified in the RCRA NOTICES for a number of years, and have been and continue to be

19  aware that continuing failure to remediate the pollution allows the petroleum hydrocarbons and

20  hydrocarbon constituents to migrate through the soils and groundwater at or adjacent to said

21  Sites, or to continually contaminate or re-contaminate actual or potential sources of drinking

22  water as well as groundwater or adjacent surface waters.

23      26.    DEFENDANTS' violations of the RCRA as alleged in this First Amended

24  Complaint are a major cause of the continuing decline in water quality, and/or a continuing threat

25  to existing or future drinking water supplies in the counties in which said Sites are located.  With

26  every discharge, groundwater and surface water supplies are contaminated.  These discharges

27

28

can or must be controlled in order for the groundwater and surface water supplies to be returned as a safe source of drinking water.

27.     RIVER WATCH is informed and believes, and on said information and belief alleges that the liability of DEFENDANTS stems from their past or present ownership or operation of the Sites identified in the RCRA NOTICES; and/or, is due to the activities conducted on said Sites by DEFENDANTS, their insurance providers, subsidiaries, contractors, employees or agents.

28.     RIVER WATCH is informed and believes, and on said information and belief alleges that Defendants WHITEY'S TBA, INC., KINNAIRD PROPERTIES, INC., RICHARD B. STERN, SUSAN E. STERN, GILBERT P. FERREY, CHARLOTTE M. FERREY and JOHN S. HUMMER TRUST, are past or present generators, past or present transporters, or past or present owners or operators of the Sites or facilities identified in the RCRA NOTICES and have contributed or are contributing to the past or present handling, storage, treatment, transportation, or disposal solid or hazardous waste which may present an imminent or substantial endangerment to health or the environment.  Further, said Defendants' handling, use, transport, treatment, storage or disposal of waste said Sites has violated and continues to violate permits, standards, regulations, conditions, requirements or prohibitions effective pursuant to the RCRA regarding hazardous or solid waste. (42 U.S.C. §§ 6972(a)(1)(A) and 6972(a)(1)(B)).  RIVER WATCH is informed and believes, and on said information and belief alleges that said Defendants have no RCRA-authorized permits authorizing the activities related to hazardous wastes described in the RCRA NOTICES.

29.     RIVER WATCH is informed and believes, and on said information and belief alleges that the handling, use, transport, treatment, storage or disposal of pollutants at the Sites identified in the RCRA NOTICES by Defendants WHITEY'S TBA, INC.,  KINNAIRD PROPERTIES, INC., RICHARD B. STERN, SUSAN E. STERN, GILBERT P. FERREY, CHARLOTTE M. FERREY and JOHN S. HUMMER TRUST, has occurred in a manner which

1   has allowed significant quantities of solid waste and hazardous hydrocarbon constituents to

2   remain in the soils, groundwater and surface waters beneath and around said Sites adjacent

3   properties and to travel off site, so as to possibly reach and impact adjacent surface waters.

4          30.    RIVER WATCH is informed and believes, and on said information and belief

5   alleges the activities of Defendants WHITEY'S TBA, INC., KINNAIRD PROPERTIES, INC.,

6   RICHARD B. STERN, SUSAN E. STERN, GILBERT P. FERREY, CHARLOTTE M.

7   FERREY and JOHN S. HUMMER TRUST as alleged in the RCRA NOTICES have been both

8   knowing and intentional; further, that said Defendants have known of the contamination at the

9   Sites to which they are associated (as identified in the RCRA NOTICES) for a number of years,

10  and have been aware and continue to be aware that continuing failure to remediate the pollution

11  allows the petroleum hydrocarbons and hydrocarbon constituents to migrate through the soils

12  and groundwater at or adjacent to said Sites, or to continually contaminate or re-contaminate

13  actual or potential sources of drinking water as well as groundwater or adjacent surface waters.

14         31.    RIVER WATCH is informed and believes, and on said information and belief

15  alleges that Defendants WHITEY'S TBA, INC., KINNAIRD PROPERTIES, INC., RICHARD

16  B. STERN, SUSAN E. STERN, GILBERT P. FERREY, CHARLOTTE M. FERREY and JOHN

17  S. HUMMER TRUST have failed to properly label, track and/or report the type, quantity or

18  disposition of waste from each of the Sites identified in the RCRA NOTICES, and have failed

19  to use manifest systems to ensure the waste generated is properly handled, stored, treated or

20  disposed of; further, that said Defendants appear to be disposing of wastes off-site without

21  compliance with either the various requirements under the RCRA, or with the State of

22  California's hazardous waste requirements authorized under the RCRA. Further, that said

23  Defendants' mishandling of wastes in violation of Subchapter C of the RCRA has created and

24  is creating an imminent and substantial endangerment to human health or the environment.

25

26

27

28

1    32.    RIVER WATCH is informed and believes, and on said information and belief

2  alleges that the liability of Defendants WHITEY'S TBA, INC.,  KINNAIRD PROPERTIES,

3  INC.,  RICHARD B. STERN, SUSAN E. STERN, GILBERT P. FERREY, CHARLOTTE M.

4  FERREY and JOHN S. HUMMER TRUST stems from their past or present ownership or

5  operation of said Sites, and/or is due to the activities conducted on said Sites by each of them,

6  their insurance providers, subsidiaries, contractors, employees or agents.

7                          **V.    FIRST CLAIM FOR RELIEF**

8    **Imminent and Substantial Endangerment to Health or to the Environment**
                          **(42 U.S.C. § 6972(a)(1)(B))**
9
                              **(As to DEFENDANTS)**
10

11    RIVER WATCH incorporates the allegations set forth above in Paragraphs 1 through 32

12  and the RCRA NOTICES as though fully set forth herein, and alleges as follows:

13    33.    RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), provides that any person may

14  commence a civil action against any person or governmental entity including a past or present

15  generator, transporter, owner or operator of a treatment, storage or disposal facility who has

16  contributed to the past or present storage, treatment, transportation, or disposal of any solid or

17  hazardous waste which may present an imminent and substantial endangerment to health or to

18  the environment.

19    34.    The hydrocarbon pollutants described in the RCRA NOTICES are known

20  carcinogens or reproductive toxins, or when released into the environment in sufficient quantity

21  pose an imminent or substantial risk to public health or to the environment in general.  RIVER

22  WATCH is informed and believes and on such information and belief alleges that the quantity

23  of hydrocarbon and hydrocarbon constituents used, handled, stored, transported, discarded,

24  disposed of, or treated by DEFENDANTS is in sufficient quantities to meet the statutory and

25  regulatory definitions of solid or hazardous waste under RCRA, and pose an imminent or

26  substantial risk to both the environment and/or to human health.

27

28

35.     RIVER WATCH is informed or believes, and on such information and belief alleges, that DEFENDANTS are of the class of entities covered by RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B); and, that DEFENDANTS are past or present generators, past or present transporters, or past or present owners or operators of treatment, storage, or disposal sites which have contributed or are contributing to the past or present storage, treatment, transportation, or disposal of a solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

36.     RIVER WATCH is informed or believes, and on such information and belief alleges that continuing acts or failures to act by DEFENDANTS to address these violations of the RCRA will irreparably harm RIVER WATCH and it members, for which harm RIVER WATCH and its members have no plain, speedy or adequate remedy at law.

Wherefore, RIVER WATCH prays for judgment against all Defendants as set forth hereafter.

### VI.  SECOND CLAIM FOR RELIEF

**Violation of Any Permit, Standard, Regulation, Condition, Requirement, Prohibition, or Order**
**(42 U.S.C. § 6972(a)(1)(A))**

**(As to WHITEY'S TBA, INC.,  KINNAIRD PROPERTIES, INC., RICHARD B. STERN, SUSAN E. STERN, GILBERT P. FERREY, CHARLOTTE M. FERREY and JOHN S. HUMMER TRUST)**

RIVER WATCH incorporates the allegations set forth above in Paragraphs 1 through 36 and the RCRA NOTICES as though fully set forth herein, and alleges as follows:

37.     RCRA § 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A) provides that any person may commence a civil action against any person or governmental entity alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to the RCRA.  Civil penalties may be assessed against any person or entity in violation of such permits, etc., under the provisions of 42 U.S.C. §§ 6928 (a) or (g).

38.     RIVER WATCH is informed or believes, and on such information and belief alleges that Defendants WHITEY'S TBA, INC., KINNAIRD PROPERTIES, INC., RICHARD B. STERN, SUSAN E. STERN, GILBERT P. FERREY, CHARLOTTE M. FERREY and JOHN S. HUMMER TRUST have failed to comply with the statutory or regulatory prevention, detection, monitoring, or remediation requirements imposed under the RCRA as described in the RCRA NOTICES.

39.     RIVER WATCH is informed or believes, and on such information and belief alleges that Defendants WHITEY'S TBA, INC., KINNAIRD PROPERTIES, INC., RICHARD B. STERN, SUSAN E. STERN, GILBERT P. FERREY, CHARLOTTE M. FERREY and JOHN S. HUMMER TRUST have no permit issued under the RCRA or by the state of California for the use, handling, storage, transportation, disposal or treatment of hazardous or solid waste at the Sites identified in the RCRA NOTICES; or if such a permit exists, that said Defendants are violating such permit(s).

40.     RIVER WATCH is informed or believes and on such information and belief alleges that the operations of Defendants WHITEY'S TBA, INC., KINNAIRD PROPERTIES, INC., RICHARD B. STERN, SUSAN E. STERN, GILBERT P. FERREY, CHARLOTTE M. FERREY and JOHN S. HUMMER TRUST at the respective Sites identified in the RCRA NOTICES include unlawful open dumping as that term is used in the RCRA, by discharging pollutants including hydrocarbons and hydrocarbon constituents to the open ground allowing these pollutants to discharge into soil, groundwater and/or surface waters.  Further, that said Sites do not qualify as landfills under 42 U.S.C. § 6944, and do not qualify as facilities for the disposal of hazardous waste.

41.     RIVER WATCH is informed or believes and on such information and belief alleges that Defendants WHITEY'S TBA, INC., KINNAIRD PROPERTIES, INC., RICHARD B. STERN, SUSAN E. STERN, GILBERT P. FERREY, CHARLOTTE M. FERREY and JOHN S. HUMMER TRUST are in violation of RCRA Subtitle C, subchapter III, (42 U.S.C. § 6921

*et seq*.), by failing to properly identify, label or list hazardous materials; by failing to keep records of their hazardous waste activities including their use, handling, storage, transportation or treatment of hazardous or solid waste; by failing to take proper measures to protect human health or the environment; by failing to monitor their activities; or, by failing to acquire RCRA-authorized permits.  Further, that said Defendants have in the past or are knowingly now transporting, treating, storing, disposing of or exporting hazardous waste identified or listed under RCRA Subtitle C, subchapter III, (42 U.S.C. § 6921 *et seq*.), thereby placing human populations in imminent danger of death or serious bodily injury.

42.    Information currently available to RIVER WATCH indicates that the violations of Defendants as described in Paragraphs 38 through 41 above have occurred every day over the past five (5) years, or on numerous separate occasions; and, that said violations are continuing.

43.    RIVER WATCH is informed or believes and on such information and belief alleges that continuing activities by Defendants WHITEY'S TBA, INC., KINNAIRD PROPERTIES, INC., RICHARD B. STERN, SUSAN E. STERN, GILBERT P. FERREY, CHARLOTTE M. FERREY and JOHN S. HUMMER TRUST as alleged herein are causing irreparable harm to RIVER WATCH and its members, for which harm RIVER WATCH and its members have no plain, speedy or adequate remedy at law.

Wherefore, RIVER WATCH prays for judgment as set forth hereafter.

**VII.  THIRD CLAIM FOR RELIEF**

**Violation of Any Permit, Standard, Regulation, Condition, Requirement, Prohibition, or Order
(42 U.S.C. § 6972(a)(1)(A));
Creating Imminent and Substantial Endangerment to Health or to the Environment
(42 U.S.C. § 6972(a)(1)(B))
Specifically - Violation of Procedural and Substantive Requirements of
42 U.S.C. § 6924**

**(As to WHITEY'S TBA, INC., KINNAIRD PROPERTIES, INC., RICHARD B. STERN, SUSAN E. STERN, GILBERT P. FERREY, CHARLOTTE M. FERREY and JOHN S. HUMMER TRUST)**

1    RIVER WATCH incorporates the allegations set forth above in Paragraphs 1 through 43

2  and the RCRA NOTICES as though fully set forth herein, and alleges as follows:

3    44.    RIVER WATCH is informed or believes and on such information and belief

4  alleges that Defendants WHITEY'S TBA, KINNAIRD PROPERTIES, RICHARD & SUSIE

5  STERN, GILBERT & CHARLOTTE FERREY and the JOHN S. HUMMER TRUST have not

6  complied with any of the procedural and substantive requirements of the RCRA pursuant to

7  RCRA § 3004, 42 U.S.C. § 6924, with respect to their ownership or operation of their respective

8  Sites as identified in the RCRA NOTICES.  Said requirements are enumerated in 40 C.F.R. Part

9  264 and include requirements for General Facility Standards (Subpart B), Preparedness and

10  Prevention (Subpart C), Contingency Plans and Emergency Procedures (Subpart D), Releases

11  from Solid Waste Management Units (Subpart F),  Closure and Post-Closure (Subpart G),

12  Financial Requirements (Subpart H), Surface Impoundments (Subpart K), Waste Piles (Subpart

13  L), Land Treatment (Subpart M), Landfills (Subpart N), and Miscellaneous Units (Subpart X).

14    45.    Information currently available to RIVER WATCH indicates that the violations

15  of Defendants as described in Paragraph 44 above have occurred every day over the past five (5)

16  years, or on numerous separate occasions; and, that said violations are continuing.

17    46.    RIVER WATCH is informed or believes and on such information and belief

18  alleges that continuing activities by Defendants WHITEY'S TBA, INC., KINNAIRD

19  PROPERTIES, INC.,  RICHARD B. STERN, SUSAN E. STERN, GILBERT P. FERREY,

20  CHARLOTTE M. FERREY and JOHN S. HUMMER TRUST as alleged herein are causing

21  irreparable harm to RIVER WATCH and its members, for which harm RIVER WATCH and its

22  members have no plain, speedy or adequate remedy at law.

23    Wherefore, RIVER WATCH prays for judgment as set forth hereafter.

24  //

25  //

26

27

28

1

## VIII.  FOURTH CLAIM FOR RELIEF

2

**Violation of Any Permit, Standard, Regulation, Condition, Requirement, Prohibition, or Order**

3
**(42 U.S.C. § 6972(a)(1)(A));**
**Creating Imminent and Substantial Endangerment to Health or to the Environment**

4
**(42 U.S.C. § 6972(a)(1)(B))**
**Specifically - Unpermitted Handling, Treatment, Storage, Transportation and/or**

5
**Disposal of Hazardous Waste**
**(42 U.S.C. § 6925)**

6

7
**(As to WHITEY'S TBA, INC.,  KINNAIRD PROPERTIES, INC., RICHARD B. STERN, SUSAN E. STERN, GILBERT P. FERREY, CHARLOTTE M. FERREY and JOHN S. HUMMER TRUST)**

8

9        RIVER WATCH incorporates the allegations set forth above in Paragraphs 1 through 46

10   and the RCRA NOTICES as though fully set forth herein, and alleges as follows:

11        47.    RIVER WATCH is informed or believes and on such information and belief

12   alleges that the deposition and maintenance of solid or hazardous waste by Defendants

13   WHITEY'S TBA, INC., KINNAIRD PROPERTIES, INC.,  RICHARD B. STERN, SUSAN E.

14   STERN, GILBERT P. FERREY, CHARLOTTE M. FERREY and JOHN S. HUMMER TRUST

15   as described herein causes and has caused the generation and discharge of solid or hazardous

16   waste to the environment.

17        48.    RIVER WATCH is informed or believes and on such information and belief

18   alleges that Defendants WHITEY'S TBA, INC., KINNAIRD PROPERTIES, INC.,  RICHARD

19   B. STERN, SUSAN E. STERN, GILBERT P. FERREY, CHARLOTTE M. FERREY and JOHN

20   S. HUMMER TRUST have installed and maintained a system of conveyances to dispose of the

21   solid or hazardous generated and released from their respective Sites as identified in the RCRA

22   NOTICES, but do not possess permits for the handling, storage, treatment, transportation, and/or

23   disposal of hazardous or solid waste at the identified Sites to which each Defendant is

24   associated, in violation of RCRA § 3005, 42 U.S.C. § 6925.

25

26

27

28

1    49.    Information currently available to RIVER WATCH indicates that the violations

2  of Defendants as described in Paragraphs 47 and 48 above have occurred every day over the past

3  five (5) years, or on numerous separate occasions; and, that said violations are continuing.

4    50.    RIVER WATCH is informed or believes and on such information and belief

5  alleges that continuing activities by Defendants WHITEY'S TBA, INC., KINNAIRD

6  PROPERTIES, INC., RICHARD B. STERN, SUSAN E. STERN, GILBERT P. FERREY,

7  CHARLOTTE M. FERREY and JOHN S. HUMMER TRUST as alleged herein are causing

8  irreparable harm to RIVER WATCH and its members, for which harm RIVER WATCH and its

9  members have no plain, speedy or adequate remedy at law.

10    Wherefore, RIVER WATCH prays for judgment as set forth hereafter.

11  ### IX.   FIFTH CLAIM FOR RELIEF

12  **Violation of Any Permit, Standard, Regulation, Condition, Requirement, Prohibition, or Order**
**(42 U.S.C. § 6972(a)(1)(A));**
13  **Creating Imminent and Substantial Endangerment to Health or to the Environment**
14  **(42 U.S.C. § 6972(a)(1)(B))**
**Specifically - Prohibition Against Open Dumping**
15  **(42 U.S.C. § 6945)**

16  **(As to WHITEY'S TBA, INC., KINNAIRD PROPERTIES, INC., RICHARD B. STERN, SUSAN E. STERN, GILBERT P. FERREY, CHARLOTTE M. FERREY**
17  **and JOHN S. HUMMER TRUST)**

18    RIVER WATCH incorporates the allegations set forth above in Paragraphs 1 through 50

19  and the RCRA NOTICES as though fully set forth herein, and alleges as follows:

20    51.    RIVER WATCH is informed or believes and on such information and belief

21  alleges that Defendants WHITEY'S TBA, KINNAIRD PROPERTIES, RICHARD & SUSIE

22  STERN, GILBERT & CHARLOTTE FERREY and the JOHN S. HUMMER TRUST have

23  engaged in open dumping by their discharge of solid or hazardous waste into the soil in and

24  around their respective Sites as identified in the RCRA NOTICES, where such waste will

25  contaminate and has contaminated the soils, groundwater and surface waters as described therein

26  and in this First Amended Complaint.

27

28

52.     RIVER WATCH is informed or believes and on such information and belief alleges that said Sites do not qualify as landfills under 42 U.S.C. § 6944, and do not qualify as facilities for the disposal of solid or hazardous waste.

53.     RIVER WATCH is informed or believes and on such information and belief alleges that Defendants WHITEY'S TBA, KINNAIRD PROPERTIES, RICHARD & SUSIE STERN, GILBERT & CHARLOTTE FERREY and the JOHN S. HUMMER TRUST have no RCRA-authorized permit for the disposal, storage or treatment of solid or hazardous waste of the type currently and historically discharged at the identified Sites.

54.     Information currently available to RIVER WATCH indicates that the violations of RCRA §4005 by Defendants as described in Paragraphs 51 through 53 above have occurred every day over the past five (5) years, or on numerous separate occasions; and, that said violations are continuing.

55.     RIVER WATCH is informed or believes and on such information and belief alleges that continuing activities by Defendants WHITEY'S TBA, INC., KINNAIRD PROPERTIES, INC.,  RICHARD B. STERN, SUSAN E. STERN, GILBERT P. FERREY, CHARLOTTE M. FERREY and JOHN S. HUMMER TRUST as alleged herein are causing irreparable harm to RIVER WATCH and its members, for which harm RIVER WATCH and its members have no plain, speedy or adequate remedy at law.

Wherefore, RIVER WATCH prays for judgment as set forth hereafter.

**X.  SIXTH CLAIM FOR RELIEF**
**Violation of Any Permit, Standard, Regulation, Condition, Requirement, Prohibition, or Order**
**(42 U.S.C. § 6972(a)(1)(A));**
**Creating Imminent and Substantial Endangerment to Health or to the Environment**
**(42 U.S.C. § 6972(a)(1)(B))**
**Specifically: Failure to List Hazardous Materials; Failure to Keep Adequate Records**
**(42 U.S.C. § 6921 *et seq.*)**

**(As to WHITEY'S TBA, INC.,  KINNAIRD PROPERTIES, INC., RICHARD B. STERN, SUSAN E. STERN, GILBERT P. FERREY, CHARLOTTE M. FERREY and JOHN S. HUMMER TRUST)**

1    RIVER WATCH incorporates the allegations set forth above in Paragraphs 1 through 55

2   and the RCRA NOTICES as though fully set forth herein, and alleges as follows:

3    56.    RIVER WATCH is informed or believes, and on such information and belief

4   alleges that Defendants WHITEY'S TBA, INC., KINNAIRD PROPERTIES, INC.,  RICHARD

5   B. STERN, SUSAN E. STERN, GILBERT P. FERREY, CHARLOTTE M. FERREY and JOHN

6   S. HUMMER TRUST are in violation of RCRA Subtitle C, subchapter III, (42 U.S.C. § 6921

7   *et seq*.), by failing to properly identify, label or list hazardous materials; by failing to keep

8   records of their hazardous waste activities including their use, storage, transportation or

9   treatment of hazardous or solid waste; by failing to keep records of hazardous waste that has

10  been released into soils and groundwater from their respective Sites as identified in the RCRA

11  NOTICES, including the amounts of hazardous waste remaining to be remediated or otherwise

12  removed at each of the Sites; by failing to take proper measures to protect human health or the

13  environment; by failing to monitor their activities; or, by failing to acquire RCRA-authorized

14  permits for the disposal of hazardous waste at said Sites, all of which acts or failures to act are

15  causing imminent and substantial risk to the environment or to human health, placing persons

16  in imminent danger of death or serious bodily injury.

17   57.    RIVER WATCH is informed or believes and on such information and belief

18  alleges that continuing acts or failure to act by Defendants WHITEY'S TBA, INC., KINNAIRD

19  PROPERTIES, INC.,  RICHARD B. STERN, SUSAN E. STERN, GILBERT P. FERREY,

20  CHARLOTTE M. FERREY and JOHN S. HUMMER TRUST as alleged herein are causing

21  irreparable harm to RIVER WATCH and its members, for which harm RIVER WATCH and its

22  members have no plain, speedy or adequate remedy at law.

23   Wherefore, RIVER WATCH prays for judgment as set forth hereafter.

24  //

25  //

26

27

28

# XI.   PRAYER FOR RELIEF

RIVER WATCH prays this Court grant the following relief:

58.     Declare Defendant EXXON to have violated the RCRA, specifically 42 U.S.C. § 6972(a)(1)(B), for discharging petroleum products and constituents which are known carcinogens and/or reproductive toxins in sufficient quantities to pose an imminent and substantial risk to health and to the environment;

59.     Enjoin Defendant EXXON from discharging petroleum products and petroleum constituents from the Sites identified in the Notice of Violations and Intent to File Suit dated June 5, 2009 (EXHIBIT A) , which petroleum products and constituents pose an imminent and substantial risk to health and the environment;

60.     Declare Defendants WHITEY'S TBA, INC., KINNAIRD PROPERTIES, INC., RICHARD B. STERN, SUSAN E. STERN, GILBERT P. FERREY, CHARLOTTE M. FERREY and JOHN S. HUMMER TRUST to have violated and to be in violation of the RCRA, specifically 42 U.S.C. § 6972 (a)(1)(B), for discharging petroleum products and constituents which are known carcinogens and/or reproductive toxins in sufficient quantities to pose an imminent and substantial risk to health and to the environment;

61.     Enjoin  Defendants WHITEY'S TBA, INC., KINNAIRD PROPERTIES, INC., RICHARD B. STERN, SUSAN E. STERN, GILBERT P. FERREY, CHARLOTTE M. FERREY and JOHN S. HUMMER TRUST from discharging  petroleum  products and petroleum constituents from the Sites identified in the RCRA NOTICES, which petroleum products and constituents pose an imminent and substantial risk to health and the environment;

62.     Enjoin all DEFENDANTS from continued violations of the RCRA;

63.     Order all DEFENDANTS to fully investigate the Sites identified in the RCRA NOTICES, said investigation to include:

a. <u>Completion of Site Delineation</u>: including the characterization of the nature and extent of the underground contaminant plume(s) and the nature and extent of any commingled plumes that may be coming onto said Sites from offsite locations;

b. <u>Comprehensive Sensitive Receptor Survey</u> - to include an adjacent surface water study, water supply survey, and building conduit survey;

c. <u>Aquifer Profile Study</u> – to include identifying all water bearing strata and whether subsurface groundwater at said Sites are in communication with other aquifers; and, to include testing of all aquifers determined to be in communication with the contaminated soil and groundwater zones for all known pollutants at said Sites;

d. <u>Conduit/Preferential Pathway Study</u> – to include a study identifying all conduits or preferential pathways such as sand and gravel lenses, utility lines, underground pipes, storm drains, roads, services and other potential pathways for contaminant migration.  Such conduits and preferential pathways found to have intersected the plume should be tested for the presence of petroleum contaminants at said Sites;

e. <u>Identification and Testing of Water Supply Wells</u> – to include a door-to-door survey of potentially affected properties to determine the presence and location of any water supply wells (whether permitted or not).  Any water supply wells within the potential range of the contaminant plumes should be tested for the presence of petroleum contamination;

f. <u>Surface Water Survey</u> – to include a study determining if any surface waters have been or have the potential of being contaminated by contamination from each of the said Sites. All surface waters and drainage within 1,500 feet of the outer extent of the plume should be tested;

g. <u>Vapor Intrusion Study</u> – to include a vapor intrusion study of the buildings at each of the said Sites as well as buildings located on or off-site within the contaminated zone; and,

h. <u>Determination of Mass of Plume Constituents</u> - Determine mass of the plume and masses of the various pollutants at the Sites, whether or not part of the plume.

64.     Order all DEFENDANTS to fully remediate the Sites identified in the RCRA NOTICES, reducing all contaminants of concern in the groundwater to below WQOs within a period of five (5) years;

65.     Order all DEFENDANTS to pay RIVER WATCH's reasonable attorneys' fees or costs (including expert witness fees), as provided by law;

66.     The citizen suit provision of the RCRA, under 42 U.S.C. § 6972, states as follows:

> The district court shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce the permit, standard, regulation, condition, requirement, prohibition, or order, referred to in paragraph (1)(A), to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in paragraph (1)(B), to order such person to take such other action as may be necessary, or both, or to order the Administrator to perform the act or duty referred to in paragraph (2), as the case may be, and to apply any appropriate civil penalties under section 3008(a) and (g) [*42 U.S.C. § 6928(a) and (g)*].

In *Friends of the Earth v. Laidlaw*, 528 U.S. 167 (2000), in interpreting a nearly identical penalty clause in the Clean Water Act's citizen suit provision, the U.S. Supreme Court ruled that citizens have standing to request civil penalties even if those penalties are paid to the U.S. Treasury.

67.     Grant such other or further relief as may be just or proper.

DATED: Sept. 14, 2010             LAW OFFICE OF JACK SILVER

By:    */s/ Jack Silver*
        Jack Silver
        Attorney for Plaintiff
        NORTHERN CALIFORNIA RIVER WATCH

# EXHIBIT A

# Law Office of Jack Silver



P.O. Box 5469      Santa Rosa, California 95402
Phone 707-528-8175    Fax 707-528-8675
lhm28843@sbcglobal.net

June 5, 2009

***Via Registered Mail - Return Receipt Requested***

Rex W. Tillerson, Chief Executive Officer
Exxon Mobil Corporation
5959 Las Colinas Boulevard
Irving, TX 75039-4202

President/Chief Executive Officer
Whitey's TBA, Incorporated
465 Kenwood Court, Suite A
Santa Rosa, CA 95407

**Re:   Notice of Violations and Intent to File Suit under the Resource Conservation and Recovery Act**

Dear Owner, Site Manager and other Responsible Parties:

## NOTICE

On behalf of Northern California River Watch ("River Watch"), I am providing statutory notification to the Exxon Mobil Corporation and Whitey's TBA, Inc. (hereafter jointly referred to as "Polluters") of continuing and ongoing violations of the Federal Resource Conservation and Recovery Act ("RCRA") 42 U.S.C. § 6901 et seq.), in conjunction with their continuing operations at three gasoline service station sites described below.   River Watch is also providing notice of these same violations to the owner, listed below, of the real property on which each of the service stations are or were situated.  The current owner and operator of each of these sites, Whitey's TBA, Inc., may be in part responsible for ongoing contamination due to more recent releases of hydrocarbons at these sites, or pursuant to RCRA provisions, by reason of its ownership of the real property under which the hazardous contamination has been found.

RCRA 42 U.S.C. § 6901 et seq., requires that 60 days prior to the initiation of an action for violation of a permit, standard, regulation, condition, requirement, prohibition or

order effective under the RCRA, a private party must give notice of the violation to the alleged violator, the Administrator of the Environmental Protection Agency and the State in which the violation is alleged to have occurred. If the alleged violator is an individual or corporation, service of notice shall be accomplished by registered mail addressed to, or by personal service upon, the owner or site manager, with a copy sent to the registered agent of the corporation. 42 U.S.C. § 6972(b)(1)(A).

The RCRA also requires that a private party provide 90 days prior notice to the alleged violator, the Administrator of the Environmental Protection Agency and the State in which the violation is alleged to have occurred before initiating an action which alleges violations resulting in imminent and substantial endangerment to human health or the environment. 42 U.S.C. § 6972(b)(2)(A). However, such an action may be brought immediately after such notification when a violation of Subtitle C of the RCRA is alleged.

Subchapter C of the RCRA requires hazardous waste to be tracked from the time of its generation to the time of its disposal, and further requires that such waste not be disposed of in a manner that may create a danger to human health or to the environment. As discussed below Polluters operate illegal, non-permitted, ,hazardous waste treatment, storage and disposal sites. Polluters have either failed to properly label, track and/or report the type, quantity or disposition of waste from those sites, or have failed to use a manifest system to ensure the waste generated is properly handled, stored, treated or disposed of. Polluters are disposing wastes off-site without compliance with either the various requirements under the RCRA or with the State of California's hazardous waste requirements authorized under the RCRA. Polluters' mishandling of wastes in violation of Subchapter C of the RCRA has and is creating an imminent and substantial endangerment to human health or the environment.

River Watch alleges violations of Subchapter C with regard to both a violation of a permit, standard, regulation, condition, requirement, prohibition or order effective under the RCRA, as well as for an imminent and substantial endangerment to human health or the environment.

On behalf of its members River Watch hereby provides statutory notification to Polluters of their continuing and ongoing violations of the RCRA.

River Watch hereby notifies Polluters that at the expiration of the appropriate notice periods under the RCRA, River Watch intends to commence a civil action against Polluters on the following grounds:

1.  Polluters' use and storage of petroleum products at their gasoline station sites identified in this Notice has and continues to violate permits, standards, regulations, conditions, requirements and/or prohibitions effective pursuant to the RCRA regarding storage of petroleum in underground storage tanks ("USTs") [42 U.S.C. § 6972(a)(1)(A)];

2.     Polluters' operations at the gasoline station sites identified in this Notice have caused petroleum contamination of soil and groundwater which presents an imminent and substantial endangerment to human health and the environment [42 U.S.C. § 6972(a)(1)(B)];

3.     Polluters' past and current operations at the gasoline station sites identified in this Notice violates the provisions of RCRA subchapter III, specifically 42 U.S.C. §6924, which governs the mishandling of hazardous wastes. River Watch contends that Polluters have inadequately maintained records with respect to the manner in which their hazardous wastes have been treated, stored and/or disposed of; inadequately monitored, reported and/or complied with existing regulations concerning their wastes; inadequately provided storage facilities for their wastes; and in the past have not developed adequate contingency plans for effective action to minimize damage from the unauthorized releases of hazardous contaminants – all of which has presented a substantial endangerment to human health and to the environment.

Under the RCRA, notice to a violator regarding an alleged violation of a permit, standard, regulation, condition, requirement, or order which has become effective under the RCRA shall include sufficient information to permit the recipient of the notice to identify the permit, standard, regulation, condition, requirement, or order which has allegedly been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the date or dates of the violation (or reasonable range), and the full name, address, and telephone number of the person giving notice.  River Watch therefore provides the following information:

**1.     The standard, limitation, or order alleged to have been violated.**

The RCRA,  enacted in 1976, is a Federal law of the United States contained in 42 U.S.C. §§ 6901-6992k.   Its goals are: to protect the public from harm caused by waste disposal; to encourage reuse, reduction, and recycling; and, to clean up spilled or improperly stored wastes.

The Environmental Protection Agency's ("EPA") waste management regulations are codified at 40 C.F.R. §§ 239-282. Regulations regarding management of hazardous waste begin at 40 C.F.R. § 260.  Pursuant to the RCRA, the State of California has enacted laws and promulgated regulations that are at least as stringent as the federal regulations.

Polluters' use and storage of waste at the sites identified further in this Notice, and the disposal of those wastes as described in this Notice, has and continues to violate permits, standards, regulations, conditions, requirements and/or prohibitions effective pursuant to the RCRA regarding hazardous waste. [42 U.S.C. § 6972(a)(1)(A)].

Polluters' operations at the sites identified further in this Notice have caused contamination of soil, groundwater, surface waters and residential areas, which contamination presents an imminent and substantial endangerment to human health and the environment. Polluters own or operate discreet conveyances, preferential pathways or wells which have contributed to the transportation, treatment, storage, or disposal of the wastes at the identified sites. [42 U.S.C. § 6972(a)(1)(B)].

## 2.    The Activity Alleged to Constitute a Violation

Narratives are set forth below describing with particularity the activities leading to the violations alleged in this Notice. In summary, the RCRA requires that the environment and public be protected from the hazardous wastes generated by Polluters. Pollutants described herein found at the sites identified in this Notice constitute hazardous waste under the RCRA, and are required to be managed so as to not cause endangerment to the public or the environment. The RCRA specifically protects groundwater.

The liability of Polluters stems from either their ownership of the identified sites or activities conducted on the sites by Polluters which violate the RCRA and have contributed to the past or present handling, storage, treatment, transportation, or disposal of any hazardous waste which may present an imminent and substantial endangerment to health or the environment. River Watch also alleges Polluters to be in violation of a permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to the RCRA. Polluters are guilty of open dumping, as that term is used in the RCRA, by discharging pollutants to the open ground, allowing these pollutants to discharge to both groundwater and surface waters. The sites identified in this Notice do not qualify as landfills under 42 U.S.C. § 6944, and do not qualify as facilities for the disposal of hazardous waste. Polluters have no RCRA-authorized permit for disposal, storage or treatment of solid or hazardous waste of the type currently and historically discharged at the identified sites.

The liability of Polluters also stems from their ownership or operation of discrete conveyances, preferential pathways or wells which have caused pollutants to be discharged to surface and groundwaters via Polluters' conduits such as pipes, sewer lines, storm drains, utilities and the like, facilitating pollutant migration and discharge to waters of the State of California and the United States, and contributing to the past or present handling, storage, treatment, transportation, or disposal of any hazardous waste which may present an imminent and substantial endangerment to health or the environment.

Polluters' past and current operations at these gasoline station sites as identified in this Notice violates the provisions of the RCRA, 42 U.S.C. §6924, which governs the mishandling of hazardous wastes. River Watch contends Polluters have inadequately maintained records of the manner in which their hazardous wastes have been treated, stored and/or disposed of; inadequately monitored, reported and/or complied with existing regulations concerning their wastes; inadequately provided storage facilities for their wastes;

and in the past have not developed adequate contingency plans for effective action to minimize damage from the unauthorized releases of hazardous contaminants – all of which has presented a substantial endangerment to human health and to the environment.

### 3.     The discharger responsible for the alleged violation.

The dischargers responsible for the alleged violations are the addressees of this Notice and the entities identified herein, collectively referred to as "Polluters" throughout this Notice.

### 4.     The date or dates of violation or a reasonable range of dates during which the alleged activities occurred.

The RCRA is a strict liability statute with a statute of limitations of 5 years; therefore, although violations of RCRA have occurred for more than 5 years, the range of dates covered by this Notice is June 5, 2004 through the date of this Notice letter.  River Watch will from time to time update and supplement this Notice to include all violations by Polluters which occurs after the date of this Notice.  The majority of the violations identified in this Notice such as: discharging pollutants to groundwater and surface waters; failure to obtain RCRA-authorized permits; failure to implement the requirements of the RCRA; failure to properly label, track or report the type, quantity or disposition of waste; failure to use a manifest system to ensure waste generated is properly handled, stored, treated or disposed of; and, failure to meet water quality objectives, are continuous.  Therefore each day is a violation. River Watch believes all violations set forth in this Notice are continuing in nature or will likely continue after the filing of a lawsuit.  Specific dates of the other violations are evidenced in Polluters' own records (or lack thereof) or files and records of other agencies including the Regional Quality Control Board, GeoTracker, Los Angeles County Health and local police and fire departments.

### 5.     The full name, address, and telephone number of the person giving notice.

The entity giving notice is Northern California River Watch, identified throughout this Notice as "River Watch".  River Watch is a non-profit corporation organized under the laws of the State of California, located at 500 North Main Street, Suite 110, Sebastopol, CA, 95472 - telephone (707) 824-4372.  River Watch is dedicated to the protection and enhancement of the waters of the State of California including all rivers, creeks, streams and groundwater in Northern California.

The violations of Polluters as set forth in this Notice affect the economic stability, physical health and aesthetic enjoyment of members of River Watch who reside and recreate in the affected watershed areas.  The members of River Watch use the watershed for domestic water supply, agricultural water supply, recreation, sports, fishing, swimming, shellfish harvesting, hiking, photography, nature walks and the like.  Their health, use and

enjoyment of this natural resource are conditions specifically impaired by these violations of the RCRA.

## IDENTIFICATION OF SITES AND BACKGROUND HISTORY

1.   **Former Exxon Service Station #7-0249**
     **6301 Commerce Boulevard, Rohnert Park, CA**

This former Exxon gasoline service station is situated at the corner of Commerce Boulevard and the Rohnert Park Expressway and is currently operated as a Valero-branded service station. The underlying real property is owned by Whitey's TBA, Inc. Exxon has not owned or operated this site since approximately June of 2000, but remains primarily responsible for its remediation on the basis of contractual agreements with subsequent site owners.

This site was originally developed as a gasoline station by Texaco in approximately 1968 and was later purchased by Exxon for continued use as a retail gasoline service station. Exxon assumed remediation responsibilities for this site at least by February of 1998. The first reported release occurred in approximately December of 1986 following removal of large USTs at the site.

Monitoring wells were installed in 1987 but active remediation has apparently never been commenced, despite the presence of high levels of petroleum hydrocarbons at and around the site in subsurface soils and groundwater.

Depth to groundwater varies from between 4 feet to 17 feet bgs, depending upon the season. Groundwater generally flows under the site to the southwest. The site lies above an aquifer which is used as a source of the water supply for the local community. Groundwater in the site vicinity has been designated as having a beneficial use for municipal, industrial, and agricultural applications, according to the Water Quality Control Plan for the North Coast Region.

Sensitive receptor survey data indicate there are 9 active municipal wells within 1,500 meters of this site. The nearest municipal well is located 1,300 feet to the northeast. The nearest downgradient municipal well is approximately 1,800 feet southwest. Private water wells have been found at approximately 975 feet from the site. Hinebaugh Creek is located approximately 950 feet to the north. Copeland Creek is located approximately 1,800 feet to the south. Both Creeks flow westward.

Concentration levels in soil and groundwater at the site remain excessively above State maximum contamination levels ("MCLs") and above water quality objectives ("WQOs"). Based upon the most recent monitoring in December of 2008, TPHg is as high

as 100,000 ug/l, TPHd is as high as 9,600 ug/l, the benzene level is at 1,100 ug/l, toluene is at 500 ug/l, ethanol is at 10,000 ug/l, and the xylenes concentration level is at 5,000 ug/l.

It is apparent from a review of the history of this site that Exxon and its engineering consultants are attempting to rely upon natural attenuation rather than active remediation efforts to eliminate the threat of contamination to the surrounding environment. Efforts to fully delineate the site have yet to be completed. River Watch believes more proactive remediation strategies need to be employed here to interdict further environmental damage. At the present time it appears nothing more than periodic groundwater monitoring is occurring. In the meantime high levels of contamination continue to threaten the health of residents in this area and continue to degrade the local environment, including groundwater which communicates with an aquifer used for drinking water supply.

River Watch seeks engineering assurances that the underlying aquifer is not at risk and, that residual contamination at the site is not migrating to outlying groundwater and potentially to surface waters in the area. Proactive remediation using "best available technology" must be implemented, and some efforts to estimate the residual plume mass and the amount of time necessary to remediate the site must be accomplished in keeping with standard cleanup protocols in the industry.

**2.   Former Exxon Station #7-0248**
**175 Southwest Boulevard, Rohnert Park, CA**

This former Exxon service station is located at the southwest corner of Southwest Boulevard and College View Drive. The real property on which the former station was situated is currently owned by Whitey's TBA, Inc. This station, currently operating as a Valero-branded gasoline station, is located in a mixed residential and commercial neighborhood.

This site has been used as a gasoline station at least since 1965. Exxon later acquired the property from Texaco Refining Co., and assumed the role of responsible party for purposes of contaminant remediation in approximately February of 1998. The first reported release occurred in approximately June of 1986 following discovery of soil contamination at the time of a tank removal.

In 1987 monitoring wells were installed to determine the lateral extent of hydrocarbon contamination under and around this property. In 1991 four USTs were removed and further soil and groundwater contamination was noted at that time. By that time there was also evidence that the adjacent gasoline station (Rotten Robbie # 41) may also have had unauthorized hydrocarbon releases which had commingled with the Exxon-related plume across College View Drive to the west.

Intermittently between 1996 and 2004, remediation consultants for Exxon installed a soil vapor extraction (SVE) system and a groundwater extraction treatment (GET) system. However, the remediation work was discontinued in 2004 due to Exxon's inability to renew its NPDES permit due to issues with meeting TBA discharge limits and bio-assay requirements. It was then determined that obtaining a sewer discharge permit from the City of Rohnert Park would not be cost-effective, and the remediation equipment was eventually removed. No remediation has occurred since the latter part of 2004.

Depth to groundwater varies from between 2.7 feet to 37.9 feet, depending upon the season. Groundwater generally flows to the north and northwest under the site. The site lies above an aquifer used as a source of the water supply for the local community. Groundwater in the site vicinity has been designated as having a beneficial use for municipal, industrial, and agricultural applications, according to the Water Quality Control Plan for the North Coast Region. Three groundwater production wells have been identified as within 1,800 to 2,000 feet from the site. The nearest body of surface water is a northwestward flowing unnamed drainage ditch located 250 feet southwest of this site.

Concentration levels in soil and groundwater at the site remain excessively above MCLs as well as WQOs. On the basis of current monitoring reports dated in December of 2008, TPHg is as high as 60,000 ug/l, the benzene level is at 3.700 ug/l, toluene is at 14,000 ug/l, TBA is at 2,500 ug/l, and the xylenes concentration level is at 16,000 ug/l.

At the present time no remediation is being accomplished. The consultant at this site or Polluters are apparently content to have the site remediation completed sometime in the next 20 to 30 years by means of natural attenuation. During that time this site will remain a threat to the human population and the local area environment. No estimates of the residual contaminant plume mass has been found, and no estimate of the length of time to remediate the site to MCLs has been done. River Watch believes Polluters must work much more proactively to neutralize the soil and groundwater beneath and around this site by employing best available technology as required by the Water Quality Control Plan.

**3.    Former Exxon Station #7-0241**
**5153 Old Redwood Highway North, Petaluma, CA**

The real property on which this former station is situated is currently owned by Whitey's TBA, Inc. This station, currently operating as a Valero-branded gasoline station, is located in a mixed residential and commercial neighborhood.

The site has been used as a gasoline service station at least since approximately 1973 and had been operated as a gasoline station by Texaco Refining Co. until early in 1988. Exxon acquired the property from Texaco, and as with the sites identified above, assumed the role of responsible party for purposes of contaminant remediation in approximately February of 1998. The first reported release occurred in December of 1988, following

discovery of soil contamination at the time of tank removals. While this site was still under Texaco's control, a GET system was installed and operated between September of 1995 and May of 1997, for purposes of remediation of groundwater contamination. The current consultant has reinstalled a GET system and an SVE system since October of 2005.

Depth to groundwater varies from between 3.6 feet to 30.4 feet, depending upon the season. Groundwater generally flows to the southeast and periodically to the southwest under the site – generally towards the Petaluma River. The site lies above an aquifer that is used as a source of the water supply for the local community. Groundwater in the site vicinity has been designated as having a beneficial use for municipal, industrial, and agricultural applications, according to the Water Quality Control Plan for the North Coast Region.

Concentration levels in soil and groundwater at the site remain excessively above MCLs as well as WQOs. On the basis of current monitoring reports dated in October of 2008, TPHg is as high as 3,700,000 ug/l (0.21 feet of NAPL), TPHd is as high as 100,000 ug/l, the benzene level is at 370 ug/l, toluene is at 110 ug/l, ethylbenzene is at 1,300 ug/l, and the ethanol concentration level is at 2,500 ug/l.

At the present time consultants for Exxon are conducting soil vapor extraction in conjunction with pumping and treating groundwater. High vacuum dual-phase extraction has been determined as the only feasible remediation strategy (because of limited ROI due to the site's soil characteristics), but estimates of residual hydrocarbon mass have apparently been underestimated. Reports in July of 2003 estimated that at then-projected extraction rates, remediation to acceptable levels would occur within 3 years. That has not happened. At the present time, one of the monitoring wells contains pure product, the origins of which have apparently not been determined inasmuch as the only reported release occurred over 20 years ago. It seems apparent that an unreported release has occurred sometime in the interim.

This site remains a threat to the human population and the local area environment in terms of the potential affect upon the underlying aquifer. River Watch believes Exxon must work much more proactively to neutralize the soil and groundwater beneath and around this site by employing best available technology as required by the Water Quality Control Plan. Current levels of groundwater extraction may be insufficient for the size of the plume to be remediated. Available data on this site should include current estimates of contaminant plume mass and projected remediation dates at the present rates of extraction. In this particular case, specific soil extraction may be required to recover the pure product that persists in one of the wells.

## REGULATORY STANDARDS

The Resource Conservation and Recovery Act of 1976 is a federal law of the United States, the goals of which are protection of the public and the environment from harm caused

by waste storage and disposal, and to mandate the proper remediation of soil and groundwater which has been contaminated by hazardous waste and hazardous products, including petroleum hydrocarbons and gasoline formula constituents. The RCRA is a strict liability statute with a statute of limitations of 5 years. Pursuant to the RCRA, California has enacted laws and regulations which must be observed in conjunction with provisions of the RCRA. California's WQOs exist to ensure protection of the beneficial uses of water. Several beneficial uses of water exist. The most stringent water quality objectives for protection of all beneficial uses are selected as the protective water quality criteria. Alternative cleanup and abatement actions need to be considered which evaluate the feasibility of, at a minimum: (1) cleanup to background levels, (2) cleanup to levels attainable through application of best practicable technology, and (3) cleanup to protective water quality criteria levels.

The Regional Water Quality Control Board has adopted a Water Quality Control Plan or Basin Plan which designates all surface and groundwater within the North Coast and San Francisco Bay regions as capable of supporting domestic water supply. The Board has adopted MCLs and/or WQOs for petroleum constituents in surface and groundwater within the region of 50 ppb for TPHg, 1 ppb for benzene, 150 ppb for toluene and 5 ppb for MTBE.

## **VIOLATIONS**

### **Permits, Standards and Regulations - [42 U.S.C. § 6972(a)(1)(A)]**

Provisions of the RCRA govern the use and operation of USTs used for storage of petroleum products (subchapter IX, 42 U.S.C. § 6991 et seq.). The RCRA UST regulatory program is adopted and implemented in California under the State Underground Storage of Hazardous Substance Account Act (California Health & Safety Code § 25280 et seq.).

Between June 5, 2004 and the date of this Notice Polluters' use and storage of petroleum at the sites identified above have allowed significant quantities of hazardous petroleum constituents to be released or discharged into soil and groundwater in violation of provisions of the RCRA and California UST regulatory programs including, but not limited to, provisions governing general operating requirements for USTs, release detection and prevention requirements, release reporting and investigation requirements, and release response and corrective action requirements.

Specifically, with respect to each of the sites identified above, Polluters are responsible for the following statutory violations:

1.  Failure to prevent a release, in violation of 40 CFR §§ 280.30, 280.31 and California Health & Safety Code §§ 25292.1(a) - (c), 25292.3(a) and (b);

2.    Failure to properly detect and monitor releases, in violation of 40 CFR §§ 280.40 - 280.44 and California Health & Safety Code § 25292;

3.    Failure to properly report and keep records of the release, in violation of 40 CFR §§ 280.34, 280.50, 280.52, 280.53, 280.63(b) and California Health & Safety Code §§ 25289, 25293 and 25295(a)(1);

4.    Failure to take proper corrective action, in violation of 40 CFR §§ 280.53, 280.60 - 280.66 and California Health & Safety Code § 25295(a)(1).

### Imminent and Substantial Endangerment - [42 U.S.C. § 6972(a)(1)(B)]

Commencing in the late-1980's, Polluters used and stored, and continue to use and store, petroleum products at the sites identified above in a manner which has allowed significant quantities of hazardous petroleum constituents to be discharged to soil and groundwater beneath each of the sites and beneath adjacent properties. The contaminant levels of TPHg, benzene, toluene, and MTBE in groundwater at the sites are significantly greater than the allowable MCLs and/or WQOs for said constituents. Benzene, MTBE, TAME, and TBA are known or suspected carcinogens. Toluene is a reproductive toxin. Ethylbenzene, methanol and xylene are live toxins. All are known to harm both plants and animals. In their concentration at this locations these pollutants are creating an imminent and substantial endangerment to public health and the environment.

The violations alleged in this Notice are knowing and intentional in that Polluters have used, stored and sold petroleum products at their facilities which are known to contain hazardous substances; and, Polluters have intended that such products will be sold to and used by the public. Polluters have known of the contamination at the sites identified above at least since the late-1980's, and have also known that failing to promptly remediate the pollution allows the contamination to migrate through soil and groundwater at and adjacent to the sites and to continually contaminate and re-contaminate actual and potential sources of drinking water.

Violations of the RCRA of the type alleged herein are a major cause of the continuing decline in water quality and pose a continuing threat to existing and future drinking water supplies of Northern California. With every discharge, groundwater supplies are contaminated. These discharges can and must be controlled in order for the groundwater supply to be returned to a safe source of drinking water.

### Mishandling of Hazardous Waste - [42 U.S.C. § 6924 et seq.]

Commencing in the late-1980's, and more recently since June 5, 2004, Polluters used and stored petroleum products at the sites identified above in a manner which has allowed significant quantities of hazardous petroleum constituents to be discharged to soil and

groundwater beneath each of the sites and beneath adjacent properties.  The contaminant levels of TPHg, benzene, toluene, and MTBE in groundwater at the sites are significantly greater than the allowable MCLs and/or WQOs for said constituents.

River Watch alleges that Polluters or the other Responsible Parties to whom this Notice is addressed or provided, have, at all times material, engaged in the following activities in violation of the RCRA's waste handling provisions:

1.  Failed to adequately maintain records of hazardous wastes as described in this Notice which were treated, stored or otherwise disposed of on or offsite [42 U.S.C. §6924(a)(1)];

2.  Failed to have satisfactorily monitored, inspected, or reported in accordance with the provisions of the RCRA [42 U.S.C. §6924(a)(2)];

3.  Failed to have adequately treated, stored or properly disposed of hazardous wastes found at the sites identified herein; [42 U.S.C. §6924(a)(3)];

4.  Failed to have adequately located, designed and constructed hazardous waste treatment, storage or disposal facilities [42 U.S.C. §6924(a)(4)];

5.  Failed to have properly implemented contingency plans for effective action to minimize unanticipated damage from treatment, storage or disposal of hazardous waste found at the sites identified herein [42 U.S.C. §6924(a)(5)].

These pollutants, in their concentration at these locations, have continued to cause an imminent and substantial endangerment to public health and the environment.

In addition to the violations set forth above, this Notice is intended to cover all violations of the RCRA evidenced by information which becomes available to River Watch after the date of this Notice

## CONTACT INFORMATION - COUNSEL FOR RIVER WATCH.

River Watch has retained legal counsel to represent them in this matter.  All communications should be addressed to:

Jack Silver, Esquire
Law Office of Jack Silver
P.O. Box 5469
Santa Rosa, CA 95402-5469
Tel. (707) 528-8175
Fax (707) 528-8675

## CONCLUSION

As stated in the NOTICE section above, the RCRA requires a private party must give notice of the violation 60 days prior to the initiation of an action for violation of a permit, standard, regulation, condition, requirement, prohibition or order effective under the RCRA. (42 U.S.C. § 6972(b)(1)(A)), and 90 days prior notice when the violation is alleged to have occurred before initiating an action for an imminent and substantial endangerment to human health or the environment. [42 U.S.C. § 6972(b)(2)(A)].

However, under the provisions of 42 U.S.C. § 6924, actions that allege mishandling of hazardous waste can be brought without observing the 60/90 day notice waiting periods which are applicable to 42 U.S.C. § 6972(a)(1)(A) and 42 U.S.C. § 6972(a)(1)(B) claims, and when 42 U.S.C. § 6924 claims are brought in conjunction with § (a)(1)(A) or § (a)(1)(B) claims, none of the claims require a waiting period before a Complaint under the provisions of RCRA may be filed.

River Watch believes this Notice sufficiently states grounds for filing a lawsuit under the statutory and regulatory provisions of the RCRA as to the three sites referenced above. Within 10 days of service of this Notice letter alleging violations of RCRA subtchapter III, River Watch intends to file suit against Polluters and the individual real property owners who are deemed to be responsible parties, under the provisions of the RCRA with respect to each of the violations as alleged herein, and the existing conditions at the sites referenced above.

However, River Watch is willing to discuss effective remedies for the violations referenced in this Notice. If Polluters wish to pursue such discussions in the absence of litigation, we would encourage them to initiate such discussions within 10 days of receipt of this Notice. River Watch will not delay the filing of a lawsuit if discussions have not commenced within that period of time.

Very truly yours,

Jack Silver

JS:lhm

cc:   Lisa Jackson, Administrator
      U.S. Environmental Protection Agency
      Ariel Rios Building
      1200 Pennsylvania Avenue, N.W.
      Washington, D.C. 20460

Wayne Nastri, Regional Administrator
U.S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, CA 94105

Dorothy R. Rice, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California  95812-0100

Mark Leary, Executive Director
Calif. Integrated Waste Mgmt. Board
1001 "I" Street
Sacramento, CA 95814

Whitey's TBA, Inc.
dba Valero Express
6301 Commerce Boulevard
Rohnert Park, CA  94928

Whitey's TBA, Inc.
dba Rohnert Park Valero
175 Southwest Boulevard
Rohnert Park, CA  94928

Whitey's TBA, Inc.
dba Petaluma Valero
5153 Old Redwood Highway North
Petaluma, CA 94952

Owner and/or Station Manager
Valero Express
6301 Commerce Boulevard
Rohnert Park, CA  94928

Owner and/or Station Manager
Rohnert Park Valero
175 Southwest Boulevard
Rohnert Park, CA  94928

Owner and/or Station Manager
Petaluma Valero
5153 Old Redwood Highway North
Petaluma, CA 9492

CSC - Lawyers Incorporating Service.
Registered Agent for Service of Process
Exxon Mobil Corporation
P.O. Box 526036
Sacramento, CA 95852

Doug Thiele, Registered Agent for Service of Process
Whitey's TBA Inc.
2455 Bennett Valley Road, Suite B204
Santa Rosa, CA 95404

Jeffrey J. Parker, Esquire
Sheppard, Mullen, Richter & Hampton  LLP
333 South Hope Street, 48th Floor
Los Angeles, CA 90071-1448

# EXHIBIT B

# Law Office of Jack Silver



P.O. Box 5469          Santa Rosa, California 95402
Phone  707-528-8175    Fax  707-528-8675
lhm28843@sbcglobal.net

April 16, 2010

*Via Registered Mail -*
*Return Receipt Requested*

Rex W. Tillerson, Chief Executive Officer
Exxon Mobil Corporation
5959 Las Colinas Boulevard
Irving, TX 75039-4202

Mr. Richard Stern
Ms. Susie Stern
76 Peacock Drive
San Rafael, CA 94901

Mr. Peter Bedford
Kennaird Properties
2783 Napa Valley Corporate Drive
Napa, CA  94558

Mr. Gilbert Ferrey
Ms. Charlotte Ferrey
John S. Hummer Trust
1082 Grizzly Peak Boulevard
Berkeley, CA 94708

**Re:    Notice of Violations and Intent to File Suit under the Resource Conservation and
        Recovery Act**

Dear Owners, Site Managers and other Responsible Parties:

On behalf of Northern California River Watch ("River Watch"), I am providing
statutory notification to the Exxon Mobil Corporation, Richard Stern, Susie Stern, Kennaird
Properties, Gilbert Ferrey, Charlotte Ferry and the John S. Hummer Trust (hereafter
collectively referred to as "Responsible Parties"), of continuing and ongoing violations of

the Federal Resource Conservation and Recovery Act ("RCRA") 42 U.S.C. § 6901 *et seq*. also known as the Solid Waste Disposal Act, in conjunction with Responsible Parties' continuing operations at the three former Northern California gasoline service station Sites identified in this Notice.

The property owners identified further in this Notice are believed to own the real property on which these service stations are or were situated, and as such, may be in part responsible for ongoing contamination due to more recent releases of hydrocarbons at these Sites, or pursuant to RCRA provisions, by reason of the ownership of the real property under which the hazardous contamination has been found.

## I. STATUTORY NOTICE UNDER RCRA

Under the citizen suit provisions of the RCRA, 60 days notice prior to the initiation of an action for violation of a permit, standard, regulation, condition, requirement, prohibition or order effective under the RCRA is required.  A private party must give notice of the violation to the alleged violator, the Administrator of the Environmental Protection Agency, and the State in which the violation is alleged to have occurred.  If the alleged violator is a State or local agency, service of notice shall be accomplished by registered mail, return receipt requested, addressed to, or by personal service upon, the head of that agency.

Those citizen suit provisions further require a private party to provide 90 days prior notice to the alleged violator, to the Administrator of the Environmental Protection Agency, and to the State in which the violation is alleged to have occurred before initiating an action which alleges violations resulting in imminent and substantial endangerment to human health or to the environment.  However, such an action may be brought immediately after such notification when a violation of Subtitle C of RCRA is alleged (subchapter III, 42 U.S.C. § 6921 et seq.)

Subchapter C of the RCRA requires that hazardous waste must be tracked from the time of its generation to the time of its disposal, and further requires that such waste must not be disposed of in a manner which may create a danger to human health or to the environment. Responsible Parties appear to have failed to properly label, track and/or report the type, quantity or disposition of hazardous waste from the Sites identified in this Notice, and have failed to use an adequate manifest system to ensure that the waste generated was properly handled, stored, treated or disposed of.  Responsible Parties' mishandling of wastes in violation of Subchapter C of the RCRA has created and is creating an imminent and substantial endangerment to human health or the environment.  River Watch alleges violations of Subchapter C with regard to both a violation of a permit, standard, regulation, condition, requirement, prohibition or order effective under the  RCRA, as well as for an imminent and substantial endangerment to human health or to the environment.

River Watch hereby notifies Responsible Parties that at the expiration of the appropriate notice periods under RCRA or sooner, River Watch intends to commence a civil action against Responsible Parties on the following grounds:

Responsible Parties' use and storage of solid and hazardous wastes as described in the Background section of this Notice has violated and continues to violate permits, standards, regulations, conditions, requirements or prohibitions effective pursuant to the RCRA regarding storage of pollutants. [42 U.S.C. § 6972(a)(1)(A)]; and,

Responsible Parties' past operations at the Sites identified in this Notice have caused contamination of soil and groundwater which currently presents an imminent and substantial endangerment to human health and the environment [42 U.S.C. § 6972(a)(1)(B)].

Under 42 U.S.C. § 6972(a)(1)(A), notice regarding an alleged violation of a permit, standard, regulation, condition, requirement, or order which has become effective under the RCRA, shall include sufficient information to permit the recipient to identify the specific permit, standard, regulation, condition, requirement, or order which has allegedly been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the date or dates of the violation, and the full name, address, and telephone number of the person giving notice.   River Watch therefore provides the following information:

## 1.    Alleged Violations of permits, standards, regulations, conditions, requirements, or orders

Enacted in 1976, the RCRA is a Federal law of the United States contained in 42 U.S.C. §§ 6901-6992k, the goals of which are: to protect the public from harm caused by waste disposal; to encourage reuse, reduction, and recycling; and, to clean up spilled or improperly stored wastes.  The EPA's waste management regulations are codified at 40 C.F.R. §§ 239-282.  Regulations regarding management of hazardous waste begin at 40 C.F.R. § 260.  Pursuant to the RCRA, California has enacted laws and promulgated regulations that are at least as stringent as the federal regulations.

River Watch alleges that Responsible Parties have no hazardous waste permit for the storage, treatment or disposal of hazardous or solid waste at the Sites identified in this Notice.  Their use, handling, disposal and storage of waste at these Sites has violated and continues to violate permits, standards, regulations, conditions, requirements or prohibitions effective pursuant to the RCRA regarding hazardous waste. [42 U.S.C. § 6972(a)(1)(A)].

## 2.  Activities Alleged to Constitute Violations

To comply with this requirement, River Watch has set forth below narratives describing with particularity the activities leading to the alleged violations.  In summary, the RCRA requires that the environment and the public be protected from hazardous wastes such as those generated by Responsible Parties.  The pollutants found at the Sites identified in this Notice constitute hazardous waste under the RCRA, and are required to be managed so that potential and actual harm to the environment and to the public may be eliminated.

The liability of Responsible Parties stems from either their ownership of these Sites or activities conducted on these Sites by the entities which have violated the RCRA and contributed to the past or present handling, storage, treatment, transportation, or disposal of any hazardous waste which has violated permits, standards, regulations, conditions, requirements or orders arising under the RCRA, or which may present an imminent and substantial endangerment to health or the environment.

River Watch alleges Responsible Parties are liable for conduct including open dumping as that term is used in the RCRA by discharging pollutants as described in the Background section of this Notice, and for allowing these pollutants to be discharged into soil as well as into groundwaters and/or surface waters.  The Sites identified in this Notice do not qualify as landfills under 42 U.S.C. § 6944, and do not qualify as facilities for the disposal of hazardous or solid waste.  River Watch alleges Responsible Parties have no RCRA-authorized permit for disposal, storage or treatment of solid or hazardous waste of the type currently and historically found at these Sites.

Responsible Parties also have liability due to their ownership of, or the creation or use of preferential pathways which have allowed pollutants to be discharged to aquifers, surface and/or groundwaters via conduits facilitating pollutant migration and threatening discharge to waters of the United States, and contributing to the past or present handling, storage, treatment, transportation, or disposal of any hazardous waste which may present an imminent and substantial endangerment to health or to the environment.

River Watch alleges Responsible Parties have caused contamination of soil, surface waters and groundwaters which contamination has affected adjacent residential areas.  The groundwater at, and in the areas surrounding, the Sites identified in this Notice is hydrologically connected to adjacent wetlands and tributaries of surface waters of the State. These waters of the United States have already been affected or are at imminent risk of contamination from the plumes at each of these Sites. The contamination at these Sites presents an imminent and substantial endangerment to human health and the environment [42 U.S.C. § 6972(a)(1)(B)].

### 3.    The Parties Responsible for the Alleged Violations

The person or persons responsible for the alleged violations are the entities identified herein and collectively referred to as 'Responsible Parties' throughout this Notice.

### 4.   The Date or Dates of Alleged Violations

River Watch alleges that Responsible Parties have been in operation prior to the passage of the RCRA and have been violating the RCRA ever since it was passed. Disposition, discharge and release of pollutants at the Sites identified in this Notice can be traced as far back as 1978.   The RCRA is a strict liability statute.  Therefore, the range of dates covered by this Notice is April 15, 2005 through April 15, 2010, that is, over the previous five (5) years.  River Watch will from time to time update and supplement this Notice to include all violations that occur after the date of this Notice.

The majority of the violations identified in this Notice, such as discharging pollutants to groundwater and to surface waters, failure to obtain RCRA-authorized permits, failure to implement the requirements of the RCRA, and failure to meet State water quality objectives, etc., are continuous.  Therefore each day is a separate violation.  River Watch believes all violations set forth in this Notice are continuing in nature or will likely continue after the filing of a lawsuit.  Specific dates of violations are evidenced in the records of Exxon Mobil Corporation (or lack thereof), records of Responsible Parties, or files and records of other agencies including the Regional Water Quality Control Board ("RWQCB"), California's GeoTracker database, local county health departments, and local police and fire departments.

### 5.    Identification of Person or Entity Giving Notice

The entity giving this Notice is Northern California River Watch ("River Watch"), a non-profit corporation, organized under the laws of the State of California, and dedicated to the protection and enhancement of the waters of the State of California including all rivers, creeks, streams and groundwater in Northern California, located at 500 Main Street, Suite 110, Sebastopol, CA, 95472;  telephone number 707-824-4372.

The violations by Responsible Parties as set forth in this Notice affect the health and enjoyment of members of River Watch who reside and recreate in the affected areas.  Those members use the affected areas for recreation, hiking, photography, nature walks, sports, water, fishing, swimming, boating and the like.   Their health, use and enjoyment of these natural resources are conditions specifically impaired by the violations of the RCRA alleged in this Notice.

## II.  BACKGROUND

**A.**     **Site at 1400 South Novato Boulevard, Novato California**

This site is a former Mobil service station located at the northwestern corner of South Novato Boulevard and Rowland Boulevard.  The site was decommissioned in 1986 with the removal of its underground storage tanks ("USTs"), associated piping and dispensers.  The real property is currently owned by Kinnaird Properties of Napa, California. The site is currently occupied by a Kragen Auto Parts store.  Monitoring wells were installed in July of 1986 after high levels of petroleum hydrocarbon contamination were discovered in soil and groundwater.

Groundwater levels at the site have fluctuated between 2.1 and 7.3 feet in the years since 1986, according to engineering consultant reports (ERI: 10/30/2008).  Groundwater flow appears to be to the northwest, although surface waters in the area flow southeasterly towards Scottsdale Marsh and a series of linked marshes and wetlands bordering San Pablo Bay.  The beneficial uses of this area of Marin County include fishing, shellfish harvesting, flood and erosion control, pollution control, and stream base flow.  The fresh, brackish and saltwater marshes provide habitat for migrating shorebirds.

Pure petroleum product (non-aqueous phase liquid or "NAPL") or petroleum sheens were found in at least one monitoring well from 1994 through 2002.  The concentrations of hydrocarbons which persist in soil and groundwater have been found in the southern portions of the site and have increased over time, while concentrations in the area of the former USTs have remained stable.  The lateral extent of the contaminant plume in the southern portion of the site remains undefined.  Vertical characterization of the site remains incomplete.

A sensitive receptor survey conducted in 2007 found marshes, wetlands and three unnamed creeks located within 300 meters of the site.  One of the creeks is approximately 45 meters north of the site.  Eight residential buildings were also identified to be within a 100 meter radius.

Disregarding the 50 cubic yards of impacted soil initially removed in 1986, there has been no remediation of any kind over the past 24 years. As of the last hydrocarbon constituent monitoring and sampling done in October of 2009, TPHg levels in groundwater were as high as 14,000 ug/l; benzene was as high as 1,400 ug/l; TPHg calculated as vapor was found in multiple locations between 210,000,000 ug/m3 to 410,000,000 ug/m3. Benzene as vapor was found between 46,000 ug/m3 to 78,000 ug/m3.

According to comments from the State Water Resources Control Board ("SWRCB"), the site has an incomplete Site Conceptual Model from which to conduct remediation of the

ongoing pollution, and environmental concerns have not been adequately identified.  The SWRCB also indicated that due to high petroleum concentrations in groundwater, source control and remediation is necessary.  In addition, that the site poses unacceptable risks to human health from vapor intrusion, and requires sub-slab soil gas investigation to assess this risk.  On this basis, River Watch believes each of the investigations and remediations requested in Section V of this Notice should be implemented at the site.

**B.      Site at 1801 Imola Avenue, Napa, California**

This site is a former Mobil service station located at the southwest corner of Imola Avenue and Jefferson Street.  The site is currently vacant.   The underlying real property is owned by Richard Stern, Susie Stern, Michelle Stern, Art Berliner, Karen Quigley, Jessica Rodvien.  Mobil Oil Corp. (now Exxon Mobil) operated the site as a service station from approximately 1971 until 1984.  Monitoring wells were not installed until  late 2003, although Exxon Mobil removed the USTs in 1984.  High levels of petroleum hydrocarbon contamination have continued to be found in soil and groundwater.  There are seven on-site monitoring wells and two off-site wells.

Groundwater levels range between 2.7 and 10.4 ft. bgs.  Groundwater flow has been generally to the west-northwest and north-northwest.   Surface waters in the vicinity drain into the Napa River – approximately 900 ft. southeast of the site.   The nearest body of surface water to the site is an unnamed tributary of the Napa River located 100 ft. west (i.e. downgradient).  Groundwater in the site vicinity has been designated as having beneficial uses for municipal supply, industrial supply, industrial process, and agricultural applications.  No groundwater production wells were identified within a one-half mile radius of the site.

As of the date of this Notice, no remediation has occurred over the past 26 years since the USTs were removed.  According to the SWRCB, the extent of contamination has not been determined, although feasibility testing has been recently recommended for dual-phase extraction technology ("DPE").  The groundwater plume is not decreasing over time with natural attenuation, and it is apparent remediation is required.  The SWRCB further indicates a significant plume has migrated off-site and groundwater impact is significant.  It is also apparent to the SWRCB that the vertical and lateral extent of the contamination has yet to be completed.

As of the last period of monitoring and constituent sampling analysis done in November, 2009  there was a groundwater "grab sample" finding TPHg as high as 5,000,000 ug/l.  Apart from that sampling, TPHg was found as high as 15,000 ug/l; benzene as high as 2,600 ug/l; TBA as high as 4,100 ug/l; and TPHd as high as 1,300 ug/l.

Given the primarily clayey consistency of the soils in this area,  DPE technology seems problematic.  Inasmuch as the site remains vacant,  River Watch believes the most effective means of ridding the soil of the petroleum hydrocarbons at the source of the contamination would be to over-excavate the site.  With the existing soil composition, DPE will probably not be able to restore the soil and groundwater to State Maximum Contaminant Levels within a reasonable time frame.  To achieve a proactive remediation of the site, River Watch believes each of the investigations and/or evaluations requested in Section V of this Notice should be addressed by the engineering consultant for Exxon Mobil.

**C.     Site at 400 Third Street, San Francisco, California**

This site is a former Mobil service station located at the southwestern corner of Third Street and Harrison Street.  It has been used as a Liberty Parking Management commercial automobile parking lot since approximately 1978 and does not have any permanent structures.   Mobil Oil Corp. (now Exxon Mobil) operated the site as a gasoline service station until 1978, when Exxon Mobil transferred ownership of the site to Ferrey and Hummer Properties, owned by  Gilbert Ferrey,  Charlotte Ferrey, and the John S Hummer Trust.

 USTs were apparently first located sometime in 1992, after the discovery of petroleum hydrocarbon contamination in the soil and groundwater under the site.  Data concerning when they were removed does not seem to be available to the Exxon Mobil consultant, and the location of the USTs seems to have been lost in time.   Monitoring wells were apparently not installed and sampled until 2007.  There are six on-site monitoring wells and 11 soil vapor wells.  High levels of petroleum hydrocarbon contamination continue to be found in soil and groundwater at the site.

Groundwater levels range from between 9 and 25 ft. bgs.  The San Francisco Bay is approximately one-half mile to the east, but the flow of groundwater from the site has been variable, to the south and to the northwest at times.  The Downtown Basin of the San Francisco Bay has been designated as having  existing  beneficial uses (municipal, agricultural), and potential beneficial uses (industrial process water, industrial service water).

At the present time, residual concentrations of TPHg in excess of environmental screening levels are widely distributed throughout the artificial fill at the site, mainly from 0 to 10 ft. bgs. There are four modes of separate phase hydrocarbons ("SPH" i.e. pure product) at the site:  1) immobile SPH in vadose fill at SV1 and in native sediment; 2) inferred SPH based on concentrations of residual heavy hydrocarbons near or above residual saturation concentrations;  3) inferred SPH in vadose soil or capillary fringe based on reported concentrations; and  4) mobile SPH intermittently found in well MW4.  (ERI: 1/29/2009.)

On the basis of well monitoring and sampling done in August of 2009, TPHg levels in non-SPH quantities were as high as 64,000 ug/l; TPHd was as high as 43,000 ug/l; benzene was as high as 17,000 ug/l; toluene was as high as 20,000 ug/l; ethylbenzene was as high as 3,200 ug/l; and xylenes were as high as 16,000 ug/l.

At the present time the consultant for Exxon Mobil is conducting feasibility testing to determine the strategies for remediation.  While many technologies are available to Exxon Mobil and its consultant,  River Watch takes the position at this juncture in the process that given the high levels of contaminant concentrations, and inasmuch as the site is essentially vacant,  Responsible Parties must concede to remediate the site in the most proactive way using over-excavation which would have the effect of eliminating much of the existing SPH. Any other means of attempting to remediate the site would necessarily be drawn out over a number of years.  Considering the site has been languishing with pure product mixing in with groundwater for over 32 years, further harm to the environment must be eliminated as quickly as possible.  River Watch believes each of the investigations requested in Section V of the Notice must be conducted for the site.

### III.    LIABILITY FOR RCRA VIOLATIONS

Maximum Contaminant Levels ("MCLs") and Water Quality Objectives ("WQOs") exist to ensure protection of the beneficial uses of water.   Several beneficial uses of water exist, and the most stringent WQOs for protection of all beneficial uses are selected as the protective water quality criteria.   Alternative cleanup and abatement actions need to be considered which evaluate the feasibility of, at a minimum: 1) cleanup to background levels, 2) cleanup to levels attainable through application of best practicable technology, and 3) cleanup to protective water quality criteria levels.  Existing and potential beneficial uses of area groundwater include domestic, agricultural, industrial and municipal water supply.

The RWQCB has adopted a Water Quality Control Plan or "Basin Plan", which designates all surface and groundwater at or near the three Sites identified in this Notice as capable of supporting domestic water supply.  The pollutants at these Sites have been characterized as "hazardous waste" and/or "solid waste" within the meaning of  RCRA provisions. Accordingly, all regulatory mandates applicable to hazardous and/or solid waste apply to the use, storage and disposal of these constituents and products.

River Watch alleges Responsible Parties are in violation of a permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to the RCRA; and, that Responsible Parties are past or present generators, past or present transporters, or past or present owners or operators of a treatment, storage, or disposal facility.   Further, that Responsible Parties have contributed or are contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous

waste which may present an imminent and substantial endangerment to health or the environment.

River Watch alleges Responsible Parties have failed to prevent a release of petroleum contamination; failed to properly detect and monitor such releases; failed to properly report and keep records of such releases; and failed to take proper corrective action.

River Watch alleges Responsible Parties are guilty of open dumping as that term is used in the RCRA, by discharging pollutants to the open ground allowing these pollutants to discharge to both groundwater and surface waters. The Sites identified in this Notice do not qualify as landfills under 42 U.S.C. § 6944, and do not qualify as facilities for the disposal of hazardous waste. Responsible Parties have no RCRA-authorized permit for disposal, storage or treatment of solid or hazardous waste of the type currently and historically found at these three Sites.

Between April 15, 2005 and April 15, 2010, (i.e. over the previous five (5) years), ongoing violations of the RCRA by Responsible Parties as described herein have occurred. Responsible Parties have caused or permitted, cause or permit, or threaten to cause or permit, hazardous waste to be discharged or deposited at the identified Sites where it is, or probably will be, discharged into waters of the State. The discharge and threatened discharge of such waste is deleterious to the beneficial uses of water, and is creating and threatens to create a condition of pollution and nuisance which will continue unless the discharge and threatened discharge is permanently abated.

Past or current violations of the RCRA authorize the assessment of civil penalties. The enforcement provisions of 42 U.S.C. §§ 6928(a) and 6928(g) provide for penalties when conditions of hazardous waste disposal have been alleged as in this Notice with respect to the Sites identified above. Accordingly, under these provisions, persons or entities violating the RCRA are subject to substantial liability to the United States on a per-day basis.

Responsible Parties' use and storage of wastes at the Sites identified in this Notice from April 15, 2005 and April 15, 2010, has allowed significant quantities of hazardous constituents to be released or discharged into soil and groundwater in violation of provisions of the RCRA and California hazardous waste regulatory programs.

Contaminant levels of Halogenated Volatile Organic Compounds ("HVOCs") in the soil and groundwater at the Sites identified in this Notice are significantly greater than the allowable MCLs and/or WQOs for said constituents. The HVOCs at these Site are known carcinogens and/or reproductive toxins. All are known to harm both plants and animals. In their concentrations at these Sites and in proximity to sensitive receptors such as

groundwater, surface water, plants, insects, animals and humans, these pollutants are creating an imminent and substantial endangerment to public health and to the environment.

Responsible Parties have known of the contamination at the Sites identified in this Notice since at least the early 1980s, and have also known that failing to promptly remediate the pollution allows the contamination to migrate through soil and groundwater at and adjacent to these Sites, and to continually contaminate and re-contaminate soil, groundwater and surface waters.

## IV.  VIOLATIONS

**1.      Permits, Standards and Regulations [42 U.S.C. § 6972(a)(1)(A)]**

Responsible Parties' use and storage of petroleum products at the Sites identified in this Notice has violated and continues to violate permits, standards, regulations, conditions, requirements and/or prohibitions effective pursuant to the RCRA regarding storage of petroleum in USTs. [42 U.S.C. § 6972(a)(1)(A)]

Disposition, discharge and release of pollutants at the Sites can be traced as far back as the 1980's.  RCRA is a strict liability statute. The range of dates covered by this Notice is April 15, 2005 to April 15, 2010.   River Watch alleges Responsible Parties have caused or permitted, cause or permit, or threaten to cause or permit, petroleum contaminants, petroleum constituents and other hazardous waste to be discharged or deposited where it is, or probably will be, discharged into waters of the State and now creates, or threatens to create, a condition of pollution or public nuisance. The discharge and threatened discharge of such petroleum waste is deleterious to the beneficial uses of water, and is creating and threatens to create a condition of pollution and nuisance which will continue unless the discharge and threatened discharge is permanently abated.

**2.      Mishandling of Hazardous Waste [42 U.S.C. § 6924 et seq.]**

From April 15, 2005 through April 15, 2010, Responsible Parties have caused and/or allowed significant quantities of hazardous petroleum constituents as identified in this Notice to be discharged to soil and groundwater beneath the Sites and beneath adjacent properties.

River Watch alleges that Responsible Parties have, at all times material, engaged in the following activities in violation of the RCRA's waste handling provisions:

a.      Failed to adequately maintain records of hazardous wastes as identified in this Notice which were treated, stored or otherwise disposed of on or offsite [42 U.S.C. §6924(a)(1)];

b.    Failed to satisfactorily monitor, inspect, and report hazardous wastes in accordance with RCRA provisions [42 U.S.C. §6924(a)(2)];

c.    Failed to adequately treat, store or properly dispose of hazardous waste found at the Sites[42 U.S.C. §6924(a)(3)];

d.    Failed to adequately locate, design and construct hazardous waste treatment, storage or disposal facilities [42 U.S.C. §6924(a)(4)];

e.    Failed to properly implement contingency plans for effective action to minimize unanticipated damage from the treatment, storage or disposal of hazardous waste found at the Sites [42 U.S.C. §6924(a)(5)].

Information currently available to River Watch indicates the effects of Responsible Parties' handling, treatment, storage, transportation, and/or disposal of hazardous waste in violation of RCRA § 3004 has occurred every day during the past five (5) years, or on numerous separate occasions, and, that these violations are continuing.

## 3.    Unpermitted Handling, Treatment, Storage, Transportation and/or Disposal of Hazardous/Solid Waste [42 U.S.C. § 6925 et. seq.]

River Watch alleges that from April 15, 2005 to April 15, 2010, Responsible Parties have engaged in the following activities and/or omissions in violation of the RCRA's waste handling provisions:

a.    Responsible Parties' deposition and maintenance of hazardous and/or solid waste as described herein causes and has caused the generation and discharge of hazardous waste to the environment;

b.    Responsible Parties do not possess permits for the handling, storage, treatment, transportation, and/or disposal of hazardous or solid waste at the Sites identified in this Notice.

c.    Responsible Parties' unpermitted handling, storage, treatment, transportation and/or disposal of hazardous and/or solid waste is a violation of RCRA § 3005, 42 U.S.C. § 6925.

Information currently available to River Watch indicates the effects of Responsible Parties' handling, treatment, storage, transportation, and/or disposal of hazardous waste in violation of RCRA § 3005 has occurred every day during the past five (5) years, or on numerous separate occasions, and that these violations are continuing.

4.      **Prohibition Against Open Dumping [42 U.S.C. § 6945 et. seq.]**

River Watch alleges that from April 15, 2005 to April 15, 2010, Responsible Parties have engaged in the following activities and/or omissions in violation of the RCRA's waste handling provisions:

  a.  Responsible Parties have engaged in open dumping by their discharge of hazardous waste to open ground where it will and has contaminated the soils, groundwater and surface waters as described herein;

  b.  The Sites identified in this Notice do not qualify as landfills under 42 U.S.C. § 6944, and do not qualify as facilities for the disposal of hazardous and/or solid waste.

  c.  Responsible Parties have no RCRA-authorized permit for the disposal, storage or treatment of solid or hazardous waste of the type currently and historically discharged at the Sites identified in this Notice.

Information currently available to River Watch indicates the effects of Responsible Parties' open dumping in violation of RCRA § 4005 has occurred every day during the past five (5) years, or on numerous separate occasions, and that these violations are continuing.

5.      **UST Regulations [42 U.S.C. § 6991 et. seq.]**

Provisions of the RCRA govern the use and operation of USTs used for storage of petroleum products (subchapter IX, 42 U.S.C. § 6991 et seq.), and above-ground tanks used for the same purposes. The RCRA UST regulatory program is adopted and implemented in California under the State Underground Storage of Hazardous Substance Account Act (California Health & Safety Code § 25280 et seq.).

From April 15, 2005 to April 15, 2010, Responsible Parties' use and storage of petroleum at the Sites identified in this Notice has allowed significant quantities of hazardous petroleum constituents to be released or discharged into soil and groundwater in violation of provisions of the RCRA and California UST regulatory programs including, but not limited to, provisions governing general operating requirements for USTs, release detection and prevention requirements, release reporting and investigation requirements, and release response and corrective action requirements.

Specifically, with respect to each of the Sites, River Watch  alleges Responsible Parties are responsible for the following statutory violations:

a.     Failure to prevent a release, in violation of 40 CFR §§ 280.30, 280.31 and California Health & Safety Code §§ 25292.1(a) - (c), 25292.3(a) and (b);

b.     Failure to properly detect and monitor releases, in violation of 40 CFR §§ 280.40 - 280.44 and California Health & Safety Code § 25292;

c.     Failure to properly report and keep records of the release, in violation of 40 CFR §§ 280.34, 280.50, 280.52, 280.53, 280.63(b) and California Health & Safety Code §§ 25289, 25293 and 25295(a)(1);

d.     Failure to take proper corrective action, in violation of 40 CFR §§ 280.53, 280.60 - 280.66 and California Health & Safety Code § 25295(a)(1).

Information currently available to River Watch indicates the effects of Responsible Parties' violations of the RCRA's UST regulations, RCRA § 9001, have occurred every day during the past five (5) years, or on numerous separate occasions, and that these violations are continuing.

## 6.     Imminent and Substantial Endangerment [42 U.S.C. § 6972(a)(1)(B)]

Between April 15, 2005 and April 15, 2010, Responsible Parties used and stored petroleum products at the Sites identified in this Notice in a manner which has allowed significant quantities of hazardous petroleum constituents to be discharged to soil and groundwater beneath these Sites and beneath adjacent properties.  The contaminant levels of TPHg, benzene, toluene, and MTBE in groundwater at these Sites are significantly greater than the allowable MCL and/or WQO for said constituents. Benzene, MTBE, TAME, and TBA are known or suspected carcinogens.  Toluene is a reproductive toxin.  Ethylbenzene, methanol and xylene are live toxins.  All are known to harm both plants and animals.  In their concentration at these Sites, these pollutants are creating an imminent and substantial endangerment to public health and the environment.

Information currently available to River Watch indicates the effects of Responsible Parties' handling, treatment, storage, transportation, and/or disposal of  hazardous waste in violation of RCRA § 7002(a)(1)(B) have occurred every day during the past five (5) years, or on numerous separate occasions, and that these violations are continuing.

The violations alleged in this Notice are knowing and intentional in that Responsible Parties have used, stored and sold petroleum products which are known to contain hazardous substances; and, have intended that such products will be sold to or used by the public. Responsible Parties have known of the contamination at these Sites at least since the late 1980's, and have also known that failing to promptly remediate the pollution allows the

contamination to migrate through soil and groundwater at and adjacent these Sites, and to continually contaminate and re-contaminate actual and potential sources of drinking water.

Violations of the RCRA of the type alleged herein are a major cause of the continuing decline in water quality and pose a continuing threat to existing and future drinking water supplies of Northern California. With every discharge groundwater supplies are contaminated. These discharges can and must be controlled in order for the groundwater supply to be returned to a safe source of drinking water.

In addition to the violations set forth above, this Notice is intended to cover all violations of the RCRA evidenced by information which becomes available to River Watch after the date of this Notice.

This Notice seeks all penalties on a per-day violation for Responsible Parties' violations of the RCRA and other enforcement provisions related to such violations.

## V.   RELIEF REQUESTED

On the basis of this Notice, River Watch requests the following investigations and site evaluations in order to achieve remediation of each of the Sites identified in this Notice as soon as is reasonably feasible:

a.   **Comprehensive Sensitive Receptor Survey.**   A comprehensive sensitive receptor survey which will include a surface water study, water supply survey, and building survey for each of the Sites.

b.   **Aquifer Profile Study**.  Aquifer profiles identifying all water bearing strata and communication with the other aquifers are required to implement adequate remediation efforts.  Testing of all aquifers is necessary to determine whether there is communication between each unconfined aquifer and contaminated zones for all known pollutants at each of the Sites.

c.   **Conduit/preferential Pathway Study**. A conduit/preferential pathway study identifying all conduits or preferential pathways such as sand and gravel lenses, utilities, storm drains, sewer lines, roads, services and other potential pathways for pollution migration. Testing should be conducted of all conduits and preferential pathways found to have intersected the plume for all pollutants at each of the Sites.

d.    **Identification and Testing of Water Supply Wells.**  A door-to-door survey of potentially affected properties to determine the presence and location of any water supply wells (whether permitted or not).  Testing should be conducted for contamination of any water supply wells found within one-half mile of each of the Sites.

e.    **Surface Water Survey**.  A surface water study determining if any surface waters have been or have the potential of being contaminated by the pollutants at each of the Site.  This study should include testing of all surface waters and drainage within 1,500 feet of the outer extent of each contaminant plume.

f.    **Vapor Intrusion Study**.  Conduction of a vapor intrusion study of the buildings which exist at any of the Sites and buildings located on or off-site within the contaminated zones.

g.    **Determination of Mass of Plume Constituents.**  Determination as to current residual mass of the plume and masses of the various pollutants at each of the Sites, whether or not part of the "plume."

h.    **Toxic Metal Reasonable Potential Analysis.**  Performance of a toxic metals study which would include all metals (such as lead) with a reasonable potential of being contaminants at each of the Sites whether or not part of each plume.

i.    **Full Remediation** of each of the Sites, reducing all contaminants of concern in the groundwater to below WQOs within 5 years.

## VI.  CONTACT INFORMATION FOR RIVER WATCH

River Watch has retained legal counsel to represent them in this matter.  All communications should be addressed to:

Jack Silver
Law Office of Jack Silver
P.O. Box 5469
Santa Rosa, CA 95402
Office 707-528-8175
Fax    707-528-8675
Email:  lhm28843@sbcglobal.net

## VII.  CONCLUSION

River Watch believes this Notice sufficiently states grounds for filing suit under the statutory and regulatory provisions of the RCRA.  At the close of the notice periods or sooner, River Watch intends to file suit against Responsible Parties on the basis of each of the violations alleged in this Notice and with respect to the existing conditions at each of the Sites identified herein.

During the 90-day notice period, however, River Watch is willing to discuss effective remedies for the violations referenced in this Notice.  If Responsible Parties wish to pursue such discussions in the absence of litigation, they are encouraged to initiate such discussions immediately so that the parties might be on track to resolving the issues raised in this Notice before the end of the notice period.   River Watch will not delay the filing of a lawsuit if discussions have not commenced by the time the 90-day notice period ends.

Very truly yours,


Jack Silver

JS:lhm

cc:

Lisa Jackson, Administrator
U.S. Environmental Protection Agency
401 M Street, N.W.
Washington, D.C. 20460

Wayne Nastri, Regional Administrator
U.S. Environmental  Protection Agency, Region 9
75 Hawthorne St.
San Francisco, CA 94105

Dorothy R. Rice, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California  95812-0100

Mark Leary, Executive Director
Calif. Integrated Waste Management Board
1001 "I" Street
Sacramento, CA 95814

Executive Director
Calif. Department of Toxic Substances Control
P.O. Box 806
Sacramento, CA 95812-0806

California Attorney General's Office
California Department of Justice
P.O. Box 944255
Sacramento, CA 94244-2550

California Environmental Protection Agency
P.O. Box 2815
Sacramento, CA 95812-2815

Exxon Mobil Corporation
CSC - Lawyers Incorporating Service
Registered Agent
P.O. Box 526036
Sacramento, CA 95852

Jeffrey J. Parker, Esq.
Sheppard, Mullen, Richter & Hampton, LLP
333 South Hope Street, 48th Floor
Los Angeles, CA 90071-1448